OPINION OF THE COURT
Israel Rubin, J.
Plaintiff moves for a preliminary injunction pursuant to CPLR 6311 enjoining the defendants from taking any action to sell or assign apartment 9D at 444 East 86th Street, New York, New York, pending the determination of this action to declare plaintiff’s rights in that apartment. Defendant Diane Schechter cross-moves to dismiss the complaint upon the ground that defendant has a defense based upon documentary evidence.
*272 On January 4,1980, defendant Schechter entered into a lease of the subject apartment for the term from February 1,1980 to January 31,1983. A few months later, on May 6, 1980, she sublet the apartment to the plaintiff for a fixed term commencing June 1, 1980 and expiring January 30, 1983, one day prior to the expiration of the prime lease. The sublease was consented to and signed by the owner. The plaintiff has resided in the apartment since June of 1980. It appears that the building is now going co-operative and both plaintiff and defendant Schechter seek to purchase the co-operative shares for the apartment. Plaintiff asserts that since the apartment is her home, she is the only qualified tenant to purchase the co-operative, the offering plan extending the right to purchase to “tenants in occupancy”. Defendant Schechter, to the contrary, asserts that as the primary tenant, only she has a right to purchase the co-operative shares under the pertinent provisions of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code), not the plaintiff, who is merely a subtenant.
A preliminary injunction, seeking mandatory relief, is a drastic and extraordinary remedy which may only be granted where a clear right to relief is shown and where it is established that such relief is necessary. Before such relief is granted, plaintiff must demonstrate (1) there is a likelihood of ultimate success; (2) irreparable injury would result in the absence of injunctive relief; and (3) a balancing of the equities to effect substantial justice and to preserve the status quo warrants appropriate relief pendente lite (Grant Co. v Srogi, 52 NY2d 496; Chrysler Corp. v Fedders Corp., 63 AD2d 567; Albini v Solork Assoc., 37 AD2d 835).
Applying the foregoing standard, the documentary proof clearly establishes that plaintiff is a sublessee of the apartment, not a prime tenant by assignment, as alleged in the moving papers. The sublease is unambiguous in that regard, clearly preserving to defendant Schechter her status as prime tenant. The sublease was for a fixed term, expiring one day prior to the lease of the prime tenant. Neither did it release the tenant, Schechter, from her obligations under the lease.
*273 The Rent Stabilization Code provides in section 61 (subd 4, par [a], cl [v]) thereof that, insofar as concerns any conversion of a stabilized building to co-operative or condominium ownership, as between a tenant of record and a subtenant actually occupying the apartment, the former has the right to purchase the shares in the co-operative (see, also, Thuna v Di Sanza, 102 Misc 2d 342, affd 78 AD2d 517; Willis v Krull, NYLJ, Sept. 23,1981, p 6, col 2). Thus, the Rent Stabilization Code (§ 61, subd 4, par [a], cl [v]) directs that “sub-tenants will have no right to purchase unless approved by the tenant of record and only then would purchases by sub-tenants be included”. Here, there is no question but that Schechter as tenant of record has not consented, but rather, has challenged the sublessee, asserting herein her own right to purchase the co-operative shares.
Without dispositive effect is the claim advanced by plaintiff that, since Schechter bought a home in Brooklyn subsequent to execution of the sublease and does not maintain the apartment as her primary residence, she has no right to purchase the shares. The decisions in this State have uniformly held to the contrary that “primary residence” is an irrelevant consideration with respect to the right of the tenant to purchase co-operative shares, albeit the offering plan on its face is limited to tenants in occupancy, or such other similar term (Thuna v Di Sanza, supra; Wissner v 15 West 72nd St. Assoc., 87 AD2d 120). These judicial dispositions are binding upon this court, particularly in the absence of further legislative direction as to the underlying intention of the Rent Stabilization Code in protection to be afforded to sublessees vis-a-vis tenants of record. Legislative action is paticularly warranted as to those subtenants in possession under a sublease where the sublessor has effectively bought himself out of the prime lease and has no real intention of resuming occupancy of the apartment in the future.
In Thuna (supra), the Appellate Division of this department affirmed the order and judgment of Special Term, wherein Justice Ascione held the tenant of record entitled to purchase the co-operative shares, finding irrelevant to the issue that the tenant at the time of the offer resided in *274 California. The rights of the tenant were secured by section 61 (subd 4, par [a], cl [v]) of the Rent Stabilization Code, the court there finding inapplicable section 54, which permits a landlord to refuse to renew a lease where a tenant is not using the apartment as his primary residence. In Thuna, the apartment was occupied, not by the tenant of record, but by the tenant’s niece and her husband under an informal sublease arrangement, with rent paid to the landlord by plaintiff’s sister.
The principle expressed in Thuna has been subsequently adhered to. In Willis v Krull (supra), Justice Blyn, in reliance thereon, found the tenant of record entitled to purchase the co-operative shares, with priority over a subtenant in possession, a result consistent with the clear provisions contained in section 61 of the Rent Stabilization Code.
Most recently, in Wissner v 15 West 72nd St. Assoc, (supra), the Appellate Division, relying upon Thuna, concluded that, as a matter of law, plaintiff was an “RSL tenant” at the time of the offering, thereby entitling him to pay the insider’s price in purchasing the co-operative shares. Plaintiff had maintained the apartment as an office, from which he conducted his business as a clinical psychologist, contrary to the terms of the lease, which required that the premises be occupied by the tenant and his immediate family for living purposes only. Despite the foregoing provision, the landlord had repeatedly renewed the term of the lease, without challenge to plaintiff’s status as lessee of record; nor at any time was a notice to cure served upon the tenant.
Similarly without merit is the purported distinction offered by plaintiff that, in the cited cases, the co-operative conversions involved eviction plans, subject to section 61 of the Rent Stabilization Code, whereas here, the offering plan was amended to a noneviction co-operative conversion, alleged to be without the scope of the statute. The distinction was not alluded to by the Appellate Division in Wissner (87 AD2d 120, supra), also involving a conversion to co-operative ownership under a noneviction plan. Moreover, there is no basis for such a distinction here, where the offering plan specifically incorporates the pertinent provi *275 sions of the Rent Stabilization Code, expressly providing in section H (1) (e), at page 82 of the plan: “A subtenant will have no right to purchase unless approved in writing by the tenant of record.” Thus, the offering plan expressly recognizes the paramount right of the tenant of record over that of a sublessee in possession. Although the plan was subsequently amended to a noneviction plan, the amendment does not specifically modify the plan to eliminate the effect of section H (1) (e) thereof.
In addition, policy considerations warrant application to rent-stabilized tenants of the same rule for noneviction plans as is applicable for eviction plans under section 61 of the Rent Stabilization Code. The statute evinces a legislative design in recognition of the contractual rights of the tenant of record, while at the same time, affording sufficient protection to a subtenant under his existing sublease.
Contrary to the suggestion by plaintiff, the fact that a different rule persists upon conversion of a rent-controlled building to co-operative status is not dispositive. In Cooper v 140 East Assoc. (27 NY2d 115), the Court of Appeals upheld the right of a subtenant in a rent-controlled apartment to purchase co-operative shares. However, the New York City Rent and Eviction Regulations include subtenant and sublessee within the definition of “tenant”, entitling the subtenant as a “tenant in occupancy” of a rent-controlled apartment to purchase the stock under a cooperative plan. The situation involving rent-controlled apartments, where there is no lease or contractual obligation between the parties, is quite different from that in rent-stabilized apartments. Clearly, the statutory scheme takes cognizance of the persisting contractual rights of the parties. These considerations likewise favor the result here reached in favor of the tenant of record as having a right to purchase, not the subtenant, whose rights are fixed and limited by the sublease between the parties.
Plaintiff submits, however, that she has always maintained the apartment as her home; that she is listed in the telephone directory; and that she has paid all rent and utility charges since the inception of the sublease. Nevertheless, plaintiff’s status is dependent upon the terms and provisions of the sublease, which do not purport to extin *276 guish the interest of the tenant of record. The evidence proffered by plaintiff, such as telephone listings, utility bills, and furnishings for the apartment, cannot overcome or displace the unambiguous provisions of the lease and the sublease, which are quite explicit in setting forth the relationship and relative rights of the parties.
Accordingly, plaintiff’s motion for a preliminary injunction is denied, and defendant Schechter’s cross motion to dismiss the complaint is granted. The temporary restraining order contained in the order to show cause is vacated.