OPINION OF THE COURT
Helen E. Freedman, J.
Respondents’ motion to dismiss and petitioner’s cross motion for summary judgment seek to establish the status under the rent stabilization law of a sublessee in a building which has been converted to co-operative ownership pursuant to a noneviction plan.
FACTS
Respondents are the principals of a corporate tenant, Herr Trading Company, Inc., and the current occupants of apartment 29C in 444 East 86th Street. Petitioner is the owner of the stock for that apartment. On January 11, 1981, respondents as individuals, with the written consent of the owner, entered into a sublease with petitioner, the tenant of record of apartment 29C. The sublease was renewed three times at the same rental until July 31,1983. The renewals provided that the sublease was to be in the name of Herr Trading Co., Inc., with Lois and Gordon Herr as the tenants.
During the sublease term the prime lease was renewed from July 1,1981 to June, 1984, beyond the term of the last sublease renewal. The first extension of the sublease agreement specifically stated that it was to be a sublease and not an assignment, and reserved to petitioner all rights to purchase the apartment in the event that the *378 building, 444 East 86th Street, was to be converted to cooperative status. On June 26, 1982, petitioner executed a subscription agreement for the apartment. Respondents knew of this prospective purchase and did not object. The closing and conversion pursuant to a “non-eviction” plan took place on January 13, 1983. Although petitioner had offered the apartment to respondents for $75,000, then $65,000, they declined to purchase. A contract to sell the apartment to outside purchasers was consummated on April 29, 1983, and petitioner is obligated to deliver possession, vacant on August 1, 1983. Respondents began withholding rent on May 1, 1983. Until that time respondents had raised no objection to the rent.
ANALYSIS
Respondents have moved to dismiss the petition on the ground that, contrary to the allegations in the petition, they are stabilized tenants. They further argue that petitioner had actually assigned the lease to them, thus giving them the right to purchase the shares or to remain as stabilized tenants pursuant to section 352-eeee (subd 2, par [c], cl [iii]) of the General Business Law. Respondents also claim that as stabilized tenants they were overcharged and are due a refund. They also seek to file a demand for jury trial nunc pro tunc.
Petitioner cross-moves for summary judgment for rent owed, and for possession.
First, I find that the agreement between petitioner and respondents and subsequent renewals were subleases and not assignments. During each of the sublease periods there was a prime lease in existence for a period greater than the sublease term. It is of no consequence that the first renewal of the sublease may have antedated the fully executed renewal of the prime lease, inasmuch as petitioner’s right to renew the prime lease and his intention to do so were clearly established. The renewal of the sublease was naturally dependent upon the renewal of the prime lease. Furthermore, paragraph 4 of the sublease extension agreement of April 10, 1981 specifically states that it is a sublease extension and is not an assignment of the lease.
As sublessees respondents were not entitled to purchase the apartment or to remain in it as stabilized tenants. The *379 relevant sections of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code), and General Business Law specifically exclude sub-lessees from participation in a conversion plan and from the protection extended to nonpurchasing tenants. Moreover, their own agreement with petitioner expressly reserved purchasing rights to petitioner.
Section 61 (subd 4, par [a], cl [v]) and subdivision 5 of section 61 of the Rent Stabilization Code provide in pertinent part: “sub-tenants will have no right to purchase unless approved by the tenant of record and only then would purchases by subtenants be included” (Rent Stabilization Code, § 61, subd 4, par [a], cl [v]). “This Section 61 shall only apply to tenants in occupancy and lessees of record of vacant or subleased apartments at the time of the offering, it shall not be applicable or available to subtenants, or tenants leasing an apartment that was vacant at the time of the presentation of the Plan.” (Rent Stabilization Code, § 61, subd 5; emphasis supplied.)
The courts have sustained the exclusive right of the tenant of record/sublessor to purchase. (Thuna v Di Sanza, 102 Misc 2d 342, affd 78 AD2d 517; Trachter v Parker 86th Assoc., 115 Misc 2d 271; Burns v 500 East 83rd St. Corp., 59 NY2d 784.)
This court is aware that section 61 deals with plans known as “eviction plans”. However, as Justice Israel Rubin noted in Trachter (supra), which involved this very same building, there appears to be no reason to reach a different result in cases involving noneviction plans. “The statute evinces a legislative design in recognition of the contractual rights of the tenant of record, while at the same time, affording sufficient protection to a subtenant under his existing sublease.” (Trachter v Parker 86th Assoc., 115 Misc 2d, at p 275.)
This legislative intent is further clearly embodied in the General Business Law. Respondents claim to be nonpurchasing tenants who, pursuant to section 352-eeee (subd 2, par [c], cl [iii]) of the General Business Law, may elect to remain as rent-stabilized tenants. However, section 352-eeee (subd 1, par [e]), which defines “non-purchasing tenant” states that “A person who sublets a dwelling unit from *380 a purchaser under the plan shall not be deemed a non-purchasing tenant.” A nonpurchasing tenant is therefore a person who otherwise has the right to purchase but elects not to exercise that right. In this case only petitioner could be the nonpurchasing tenant. Respondents are not “non-purchasing tenants” and are not permitted to remain as rent-stabilized occupants.
This result is consistent with the applicable statutes, the offering plan for the building and the agreement between the parties. To hold otherwise would be to subvert the legislative intent as articulated in the Rent Stabilization Code, and more importantly, the General Business Law, upon which respondents rely. The sublessee would suddenly obtain greater rights than the sublease agreement provides. Clearly the Legislature did not intend to accord sublessees rights far in excess of those provided in their subleases. (See Trachter v Parker 86th Assoc., 115 Misc 2d 271, supra.)
With respect to the cross motion for summary judgment, the only remaining defense is that there may have been an overcharge. This could only have occurred during the period prior to conversion when petitioner, as a stabilized tenant himself, was limited in the amount he could charge a subtenant (Rent Stabilization Code, § 21). Such a determination is ordinarily made by the Conciliation and Appeals Board (Matter of Krantz v Conciliation & Appeals Bd., 57 NY2d 915). Had the subtenants applied to the Conciliation and Appeals Board for such a determination, I would stay these proceedings pending the outcome of the administrative process.
However, in view of the fact that no application has been filed during the 2½ years of the subtenancy, that the sublease agreement is about to end, and that the Conciliation and Appeals Board functions are about to be subsumed by a new agency, summary judgment shall be awarded at this time. Respondents may of course pursue their claims in a plenary action.
Based on the foregoing, judgment is awarded petitioner.
Settle judgment on notice providing for five-day stay.