OPINION OF THE COURT
Bruce McM. Wright, J.
In this action involving cotenants of a rent-stabilized apartment located in a building that is undergoing cooperative conversion, plaintiff Robin Stuart seeks to permanently enjoin her cotenant, defendant Maxine Gershon, from purchasing the shares allocated to their apartment. Plaintiff asks this court to preliminarily enjoin the defendants (the sponsor, the owner of the building and the cotenant) from doing any act in furtherance of the sale to defendant Gershon of shares of stock of the Apartment Corporation allocated to apartment 3-F located at 201 West 70th Street, New York, New York, pending the outcome of this action.
*415 STATEMENT OF FACTS
Plaintiff and Gershon are both named as tenants on the lease with respect to apartment number 3-F at 201 West 70th Street, New York, New York. They became tenants of this rent-stabilized apartment on or about December 1, 1977; both of their names and signatures appear on the original lease and the two subsequent renewals thereof, the second of which expires on November 30,1984. Associates, the owner of the premises, is the sponsor with respect to the plan to convert the premises to cooperative ownership. The plan was declared effective as a noneviction plan by notice dated October 13, 1983, and the premises are scheduled to be sold to Sherman Square Realty Corp. on January 4, 1984.
Defendant Gershon signed a subscription agreement with the Apartment Corporation for the purchase of the shares allocated to apartment 3-F on October 4,1983, three days before the expiration of the discount period for tenants in occupancy to submit subscription agreements. Gershon attended a preclosing meeting with the Apartment Corporation on November 23, 1983, at which time all documents required to effectuate the transfer of the shares (including the proprietary lease appurtenant thereto) were executed in anticipation of the delivery of such documents on the closing date.
Plaintiff Stuart has not signed a subscription agreement with respect to the shares, nor has she expressed any intention of doing so to either the sponsor or the Apartment Corporation. A reading of plaintiff’s November 23, 1983 affidavit, in support of her motion for injunctive relief, shows that she still does not seek to sign a subscription agreement either at the discount (insider’s) price or at the full (outsider’s) price.
Essentially, plaintiff seeks to prevent defendant from purchasing the shares to the apartment because she fears that Gershon’s purchase will diminish or destroy the protection she is afforded as a “non-purchasing” tenant pursuant to section 352-eeee of the General Business Law. Section 352-eeee (subd 2, par [c], cl [ii]) provides, in pertinent part, that a nonpurchasing tenant under a noneviction plan cannot be evicted “for failure to purchase or any *416 other reason applicable to expiration of tenancy” and that a nonpurchasing tenant who resides in a unit that was subject to the Rent Stabilization Code (Code) prior to conversion “continuéis] to be subject thereto” (subd 2, par [c], cl [in]). Plaintiff argues that if Gershon is permitted to purchase the shares allocated to the apartment, plaintiff’s occupancy will be excluded from the protection of the Code and Gershon could evict her at Gershon’s “whim or fancy”. Plaintiff’s counsel raises hypothetical issues relating to plaintiff’s rights should Gershon purchase the shares: How can one half of an apartment be subject to the Rent Stabilization Code and the other half not be? What rights will plaintiff have to sublet? If defendant Gershon violates the terms of her proprietary lease, how will plaintiff be affected? What amount of rent will plaintiff be obligated to pay? Counsel reasons that the law regarding plaintiff’s rights under the outlined situation is unclear, that in fact, no law has yet been established, and that, therefore, plaintiff will be irreparably harmed should Gershon be permitted to purchase the shares to the apartment.
Defendants maintain that plaintiff has not established the requirements for the granting of a preliminary injunction. They argue that section 352-eeee of the General Business Law clearly establishes that plaintiff will continue to enjoy the protections afforded by the Code with respect to rights of continued occupancy and limitation on the level of rent, even after Gershon has purchased the shares allocated to the apartment. To bolster this position, defendants state that plaintiff is protected by virtue of the fact that Associates and the Apartment Corporation have obtained Gershon’s agreement that her purchase of the shares allocated to the apartment will be expressly subject to plaintiff Stuart’s rights under the Rent Stabilization Code. Gershon’s written agreement with the sponsor and the Apartment Corporation states as follows: “I understand that any rights which I will possess upon the closing pursuant to the subscription agreement relating to the shares allocated to the Apartment and the proprietary lease appurtenant thereto are expressly subject to any rights Stuart has as a tenant in occupancy under the rent laws and the Lease.” Thus, defendants maintain, plaintiff *417 lacks any likelihood of ultimate success on the merits because she will not lose her rights as a nonpurchasing tenant; further, plaintiff has failed to offer any concrete proof of irreparable injury should an injunction not issue.
DISPOSITION
This case of apparent first impression must be resolved by a relevant reading of the legislation, an examination of the reasoning adopted by courts under similar fact patterns, and a balancing of the equities. It is evident from a close reading of section 352-eeee of the General Business Law that this statute does not expressly provide for the circumstance where one cotenant of an apartment which is undergoing conversion pursuant to a noneviction plan wishes to purchase the shares allocated to the apartment, while the other cotenant simply wishes to remain as a rent-stabilized tenant. Nor does the Rent Stabilization Code specifically address this possibility. The court notes further that the regulations that were issued in May of this year by the Real Estate Financing Bureau of the State Attorney-General’s office, governing the conversion of occupied residential property to cooperative ownership, also fail to recognize and deal with this contingency. (13 NYCRR part 18.)
The courts of this State, in the absence of a specific statutory or regulatory direction, have fashioned their own remedies for disputes arising out of cooperative conversions.
For example, in Spitalnik v Springer (87 AD2d 797, mod 59 NY2d 112), plaintiff and defendant occupied a rent-stabilized apartment as joint tenants pursuant to a lease executed by both of them. When their apartment building became subject to cooperative conversion, each tenant asserted an exclusive right to purchase the shares allocated to the apartment, and each signed a separate subscription agreement. Each tenant then sought a declaration of his or her entitlement to subscribe to the shares and of the landlord’s obligation to accept his or her individual subscription agreement. The Supreme Court, New York County, dismissed the claim of each tenant, and held that they had coequal rights to execute the subscription agreement and that the landlord was not required to deal with *418 either tenant individually but was entitled to receive a joint subscription. On appeal, the Appellate Division agreed that the individual tenants had no separate rights to subscribe to the cooperative shares, and directed that the parties could file a joint agreement within 30 days from the date of entry of its order. The Court of Appeals found “that there was no error in the determination that, although the two tenants with whom the landlord had executed a joint lease had no individual rights to subscribe, they did have the right to file a joint subscription agreement.” (59 NY2d, at p 116.) However, the holding in Spitalnik (supra), is not dispositive here, because in Spitalnik, both tenants asserted their rights to purchase the shares of the apartment. Here only one tenant has done so. The case of Burns v. 500 East 83rd St. Corp. (90 AD 2d 706, affd 59 NY2d 784) is also informative, but it does not provide a definitive answer to the question here. Burns was a declaratory judgment action for a determination as to whether plaintiff husband, who signed the lease and paid the rent but did not reside in the apartment, or defendant wife, who resided in the apartment, had the right to purchase shares allocated to the apartment under a cooperative plan. The Court of Appeals affirmed the lower court’s determination that the plaintiff husband, as the signer of the lease, was the tenant and therefore the lawful purchaser of the cooperative shares.
Has plaintiff established the three necessary elements of a likelihood of ultimate success on the merits, irreparable injury absent the granting of a preliminary injunction and a balancing of the equities in her favor? (Albini v Solork Assoc., 37 AD2d 835.) The answer must be in the negative. The courts have not directly addressed the issue of whether one cotenant, in a noneviction plan, can purchase the cooperative shares where the other cotenant does not want to purchase, but wants to remain as a rent-stabilized tenant. Section 352-eeee of the General Business Law and the Rent Stabilization Code are silent on this question. However, it is clear that the offering plan gives defendant Gershon, as a tenant in occupancy, the right to purchase the shares at an insider’s price. It is also clear that plaintiff Stuart is a “[n]on-purchasing” tenant as defined by section *419 352-eeee (subd 1, par [e]), and that under a noneviction plan she is afforded the protection of the Rent Stabilization Code.
Concededly, if defendant Gershon purchases the shares to the apartment and lives there, while plaintiff Stuart chooses to remain as a rent-stabilized tenant in the apartment, certain problems may arise to which no clear solution has been provided by the courts or by the Legislature. However, plaintiff’s uncertainty as to particular aspects of her rights as a rent-stabilized tenant after Gershon’s purchase of the cooperative shares does not constitute an irreparable injury that would justify preliminarily enjoining defendant Gershon from purchasing the shares. Furthermore, a balancing of the equities clearly tips in favor of the defendant Gershon. While plaintiff may be uncertain as to how her statutory rights will be implemented once Gershon has purchased the shares, if injunctive relief is granted to plaintiff, Gershon will be prevented from consummating her valuable right to purchase the apartment at the insider’s price.
Giving due consideration to all of the problems that cling to the present winter of discontent between the co-occupants here, it would be a harsh deprivation to deprive the defendant Gershon from availing herself of her valuable right to purchase the apartment at the insider’s price, thereby leaving the way open for a third party to purchase the shares allotted to that apartment. The interests of justice command that the plaintiff’s application for preliminary injunctive relief be denied.
The motion is denied for the foregoing reasons.