OPINION OF THE COURT
Felice K. Shea, J.
The principal question presented on this motion by defendant West 90th Street Owners Corporation to dismiss the complaint against it for failure to state a cause of action is whether a subtenant of part of an apartment may have the right to purchase shares in a cooperative corporation.
Plaintiff is a subtenant of one room of codefendant Ray Shaw’s seven-room cooperative apartment at 255 West 90th Street, New York, New York. In the underlying action, plaintiff seeks (1) a declaration that he is entitled to purchase the shares or his proportionate part of the shares allocated to the apartment together with a proportionate interest in the proprietary lease, (2) an order directing defendants to sell the shares to him at the original offering price, and (3) a declaration that he is entitled to file a senior citizen’s election not to purchase.
*628 On a motion pursuant to CPLR 3211 (subd [a], par 7) to dismiss a complaint for failure to state a cause of action, all allegations contained in the complaint will be deemed true and plaintiff is entitled to a liberal construction of the complaint and to all favorable inferences which may be drawn from it. (Underpinning & Foundation Constructors v Chase Manhattan Bank, 46 NY2d 459, 462; Barr v Wackman, 36 NY2d 371, 375.) The facts, either undisputed or as asserted in the complaint and presumed true for purposes of this motion, are as follows: Plaintiff, who is 69 years old, entered into an oral rental agreement 13 years ago with Ray Shaw under which he occupies one bedroom and has rights to use parts of the common areas of the apartment. Shaw moved into the apartment in 1960 pursuant to a lease, and has lived there and paid all rent and maintenance to the landlord since that date. Plaintiff has paid rent only to Shaw. Shaw purchased the apartment in January, 1981, but plaintiff was not aware until a later time of the offering plan or acceptance of the plan for filing with the New York State Department of Law.
Defendant claims that plaintiff knew of the cooperative conversion plan in January, 1981 when codefendant Shaw purchased the apartment, that plaintiff slept on his rights for three and one-half years and that the defendants have significantly changed their positions in the interim. All of these allegations are disputed by plaintiff, who asserts in his complaint that he acted promptly. On this motion, plaintiff’s version of the facts must be accepted and laches cannot be a bar.
Movant’s position is that only the tenant Ray Shaw had a right to purchase the apartment and that there is no legal basis for permitting plaintiff to purchase one room in a seven-room apartment. Defendant contends further that plaintiff is ineligible to elect, as a senior citizen, not to purchase under section 352-eeee of the New York General Business Law since he was not a tenant entitled to possession at the time the cooperative plan was declared effective.
Plaintiff contends that he is a “tenant” as defined by the New York City Rent and Rehabilitation Law (Administrative Code of City of New York, § Y51-1.0 et seq.) and, *629 therefore, a justiciable controversy exists which entitles him to a declaration of his rights. Plaintiff argues further that he is a “tenant in occupancy” under the New York City Rent and Eviction Regulations (Rent and Eviction Regulations) authorized to purchase shares in an apartment building undergoing cooperative conversion. He also maintains that he is an “eligible senior citizen” under the General Business Law who can elect not to purchase.
At the time of cooperative conversion, the apartment in which plaintiff lives was rent controlled by the New York City Rent and Rehabilitation Law and regulations promulgated thereunder. The right, if any, of plaintiff to buy the stock allocated to the premises is governed by section 55 (subd c, par [3], cl [a]) of the New York City Rent and Eviction Regulations which deals with a landlord’s right to occupancy and provides that no certificate of eviction shall be issued unless “(a) On the date the cooperative plan was first presented to the tenants, each tenant in occupancy of a controlled housing accommodation in the premises was furnished with a copy of the plan and notified in writing that he had the exclusive right for a period of 60 days to purchase the stock allocated to his housing accommodation at the specified price” (emphasis supplied).
The leading (and apparently only) case interpreting the phrase “tenant in occupancy” in the context of a sublessee seeking to purchase a rent-controlled apartment is Cooper v 140 East Assoc. (27 NY2d 115, mot for rearg den 27 NY2d 1006). There, the subtenant was in possession of the entire apartment for the full term of a two-year lease. The subtenant paid the rent directly to the owner and was treated by the landlord as a tenant. The Court of Appeals found the subtenant to be only nominally a subtenant or sublessee, and she was adjudged entitled to purchase the apartment. The prime tenant, who had not occupied the premises during the lease period or for some time before, was adjudged to be not a “tenant in occupancy”.
In contrast to the facts in Cooper (supra) the prime tenant here has lived in the premises continuously for 24 years, has paid the rent at all times to the landlord, has not sublet the entire apartment and has in no way abandoned the premises. Cooper stands for the proposition that a *630 subtenant in a rent-controlled apartment may, under some circumstances, be deemed the “tenant in occupancy”. It does not support plaintiff’s position under the facts on this record.
The issue of whether the prime tenant or the subtenant is entitled to purchase an apartment subject to the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) has been litigated extensively. Plaintiff apparently concedes that, in general, the Rent Stabilization Law protects the right of a lessee of record to purchase even though there is a subtenant in possession. (See, e.g., Wissner v 15 West 72nd St. Assoc., 58 NY2d 645; Ian v Wassberg, 79 AD2d 919; Thuna v Di Sanza, 102 Misc 2d 342, affd 78 AD2d 517.)
However, plaintiff seeks to distinguish the cases interpreting the Rent Stabilization Law and the Code of the Rent Stabilization Association of New York City, Inc. (Code) on the ground that subdivision 5 of section 61 of the Code provides that the right to purchase is limited to “tenants in occupancy and lessees of record of vacant or subleased apartments at the time of the offering” and no equivalent provision is included in the New York City Rent and Rehabilitation Law or its regulations. Plaintiff argues further that the Rent Stabilization Law does not include “subtenant” in any definition of tenant, whereas the City Rent and Rehabilitation Law defines a tenant as “A tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation.” (Administrative Code, § Y513.0, subd m.)
Plaintiff is correct in pointing out the differences in the two regulatory schemes. (See Burns v 500 East 83rd St. Corp., 59 NY2d 784, 786; Trachter v Parker 86th Assoc., 115 Misc 2d 271, 275.) But from the differences, plaintiff draws an unwarranted conclusion. There is no evidence of a legislative intent to give subtenants the rights he seeks. It is apparent on its face that section 55 (subd c, par [3], cl [a]) of the Rent and Eviction Regulations was drafted to govern the right of a landlord seeking a certificate of eviction and without thought to the legal niceties at bar. *631 The definition of “tenant” in the New York City Rent and Rehabilitation Law dates back to 1963 (L 1963, ch 100, § 1531), long before subtenants and prime tenants battled in significant numbers for the right to purchase shares in cooperative apartments at insider prices. It is difficult to conceive, based on the differences in the wording of the provisions governing rent-controlled and rent-stabilized tenancies, that the Legislature intended to give subtenants in rent-controlled apartments a right to purchase in all circumstances.
It is the courts, working with an outmoded statutory framework, that have set forth the legal principles in the area of who may exercise the right to buy a cooperative apartment. While the law may be in the process of definition, Cooper (supra) and the stabilization cases are not inconsistent. In Cooper, the prime tenant was a tenant in name only with no relationship to the premises. Where the prime tenancy is merely illusory, the courts will also uphold a sublessee’s right to purchase rent-stabilized apartments. (See, e.g., Stutt v Unique Restorations Co., 96 AD2d 1039; Yellon v Reiner-Kaiser Assoc., 89 AD2d 561.) There is no case holding that a prime tenant such as Shaw, who at all times made the premises her primary residence, who signed the lease and lived in the apartment for approximately 25 years, who always paid rent directly herself, is not entitled to the right to purchase. Clearly her right is superior to plaintiff’s.
The subtenant’s claim of a right to purchase his proportionate share of the apartment is equally without merit. The term “tenant in occupancy” in section 55 (subd c, par [3], cl [a]) of the Rent and Eviction Regulations refers, in the court’s view, to a tenant occupying the entire apartment. A construction that would permit purchase by a subtenant of part of the premises would place an intolerable burden on a cooperative corporation. An entirely different pricing structure would be required for an apartment sold in parts, since an apartment that cannot be occupied as a complete and private unit, but must be resold subject to a subtenant/owner, would have considerably less value than a comparable apartment without such an impediment. It would be difficult to determine how voting rights *632 should be exercised for the shares allocable to an apartment with two owners. Permitting the interpretation urged by plaintiff might well affect the equity of other shareholders in the corporation. Litigation and dissension would be inevitable as the occupants change over the ■ years.
There is no precedent for holding that a subtenant may purchase part of a cooperative apartment. While the right of joint tenants to a joint subscription agreement was upheld in Spitalnik v Springer, 87 AD2d 797, mod 59 NY2d 112), and thé rights of cotenants were considered in Stuart v One Sherman Sq. Assoc. (123 Misc 2d 414), these cases concerned the rights of tenants who were in possession or claimed a right to possession of an entire apartment.
In short, there is no authority and no policy reason to permit a subtenant occupying a fraction of an apartment, who has never paid rent to the landlord and has no relationship with the landlord, to have rights to purchase shares in a cooperative.
Plaintiff’s claim that he is entitled to file an election not to purchase as an eligible senior citizen under section 352-eeee raises essentially the same issue. Section 352-eeee (subd 1, par [e]) of the General Business Law defines “Non-purchasing tenant” as: “A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date. A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant.”
Section 352-eeee of the General Business Law specifically excludes one who sublets a dwelling unit from a purchaser under the plan, but even if it did not, the “Non-purchasing tenant” must be “entitled to possession”. For the reasons stated above, plaintiff is not entitled to possession.
It is established law in a declaratory judgment action that “on a motion to dismiss the complaint for failure to state a cause of action, the only question is whether a proper case is presented for invoking the jurisdiction of the court to make a declaratory judgment, and not whether the *633 plaintiff is entitled to a declaration favorable to him.” (Law Research Serv. v Honeywell, Inc., 31 AD2d 900, 901.) However, this does not mean, as plaintiff maintains, that a court may never reach the merits of a declaratory action on a motion to dismiss. If there are no material factual issues in dispute, a judgment on the merits may be rendered. (Fillman v Axel, 63 AD2d 876; Law Research Serv. v Honeywell, Inc., supra.)
Here, the material facts are undisputed and only legal issues are presented. Accordingly, for the reasons stated, the motion is denied and a declaratory judgment may be entered in favor of the moving defendant. The remainder of the action is severed and continued.