■ In the Matter of SYD P. KRANTZ, Respondent, v CONCILIATION AND APPEALS BOARD OF THE CITY OF NEW YORK et al., Appellants. — Order of the Supreme Court, New York County (Evans, J.) entered May 19, 1981 granting petitioner's application made pursuant to CPLR article 78 to annul the determination and order of respondent Conciliation and Appeals Board and remanding the matter to the Conciliation and Appeals Board for a new determination reversed, on the law and the facts, without costs, the petition dismissed and the determination of the Conciliation and Appeals Board reinstated. Petitioner is the lessee of apartment 6A in premises 715 Park Avenue, New York City. The apartment is a one-bedroom apartment and is rent stabilized. The monthly rental is fixed at $494.48. Effective November 1, 1978 petitioner sublet the apartment to respondent Mandel with the consent of the landlord for a term of 18 months ending April 30, 1980. The sublet included petitioner's furniture and the rental reserved in the sublease was $1,500 per month. Additionally, Mandel was required to deposit the sum of $3,000 to secure performance of the sublease. Mandel is an attorney specializing in real estate matters and resides in Scarsdale. For purposes of convenience he desired a Manhattan apartment for a limited period. He entered into possession on November 1, 1978 and continued therein until April 10, 1980. However, in or about September, 1979, he ceased paying rent. In October, 1979, petitioner brought a proceeding in the Civil Court against Mandel on the ground of nonpayment. While petitioner triumphed in the Civil Court the judgment in his favor was overturned by the Appellate Term. That court held that while the prime lessee (the sublessor in this proceeding) was entitled to a rental in excess of the prime rent to the extent that the prime tenant provided services for facilities not reflected in the lease between the owner and the prime tenant, the determination of that excess was within the exclusive province of the Conciliation and Appeals Board (CAB). Accordingly, it dismissed the nonpayment proceeding. By implication, it did so without prejudice to reinstitution after fixation of the appropriate rent by CAB. In the interim Mandel had commenced a proceeding before the CAB contending that the rental fixed in the sublease between him and petitioner was excessive and that the security deposit required exceeded the bounds of propriety. After reviewing the facts and prior proceedings the CAB concluded that a lessor of unfurnished premises who sublets the premises fully furnished is entitled to an increase in the stabilized rent not exceeding 10%. In this case the CAB allowed the full 10% thus fixing the stabilized rent payable by Mandel at $543.93 per month. As to the security it found that petitioner was entitled to exact a sum equal to one month's rent to insure faithful performance of the lease. Thereupon petitioner instituted this article 78 proceeding to annul the determination of CAB. Special Term held that CAB's failure to consider the nature of the furnishings provided by petitioner to Mandel was

arbitrary and capricious. Accordingly, it annulled the determination and order of the CAB and remanded the proceeding to consider the value of the use of the furnishings supplied by petitioner to Mandel. The policy embodied in the New York City Rent Stabilization Law of 1969 (Administrative Code of City of New York, § YY51-1.0 *et seq.*) is bottomed on the legislative finding, "that a severe shortage in housing continues to exist in the city and that unless residential rents and evictions continue to be regulated and controlled a serious threat to the public health, safety and general welfare will result". It further found that this condition was exacerbated by the decontrol of rents in housing accommodations constructed since 1947 or by reason of a rental in excess of $250 per month (Administrative Code, § YY51-1.0). Accordingly, it created a rent guidelines board empowered to determine guidelines for rent increases upon the renewal of leases or the creation of new tenancies of dwelling units at a fair level (Administrative Code, § YY51-5.0), and authorized the creation of a real estate industry stabilization association (Administrative Code, § YY51-6.0, subd a), which was to be open to all owners of multiple dwellings subject to the law. The association was required to adopt a code for the stabilization of rents and to establish a conciliation and appeals board "to receive and act upon complaints from tenants and upon appeals from owners claiming hardship under the levels for fair rent increases adopted under this law" (Administrative Code, § YY51-6.0, subd b). Since petitioner is not the owner of premises 715 Park Avenue, he is not a member of the real estate industry stabilization association. Nevertheless, under subdivision (a) of section 21 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc., where a tenant sublets a rent-stabilized apartment "the stabilization rent payable by the subtenant shall be consistent with the provisions of the Rent Stabilization Law". Section 21 also permits an increase in the stabilized rent "to the extent the subtenant is receiving facilities in addition to the required services from the prime tenant not prescribed in the stabilization rent between the owner and the prime tenant". Thus, it is plain that, upon the rental of the apartment with furnishings not included in the prime lease, petitioner was entitled to an increase over the rent reserved in the prime lease. It is equally clear CAB had the power to determine the amount of that increase. The authority of CAB to determine a fixed rate for the rendition of services by the landlord not included in the original lease has been recognized by the courts (*Fresh Meadows Assoc. v Conciliation & Appeals Bd.*, 88 Misc 2d 1003, affd for reasons stated at Special Term 55 AD2d 559, affd 42 NY2d 925; *Matter of Sovereign Apts. v New York City Rent Conciliation & Appeals Bd.*, 81 AD2d 769). We perceive no distinction between an increase based on a fixed rate and one based on a percentage of the stabilized rent. Indeed, where furnishings are involved it would seem that a percentage increase would have a more rational basis than a fixed sum for it is a fair and reasonable assumption that the higher the rent the more costly would be the furnishings. Indeed, it serves a utilitarian purpose as well as a rational one for it furnishes an appropriate guideline to primary lessees who are considering sublets of their apartments in a furnished state. Petitioner's contention that he was not afforded an opportunity to submit proof of the "luxuriously and beautifully furnished" apartment is belied by the record. Although no formal hearing was held, petitioner acknowledges that it submitted an inventory of the furnishings of the apartment to CAB. It also submitted a valuation which exceeded by more than one third the valuation submitted to Special Term. That CAB chose not to evaluate the furnishings at more than twice the value of the apartment does not indicate that it ignored petitioner's inventory or evaluation. We have considered the other issue tendered by petitioner and find it to be without merit. In sum, we

find that the determination of CAB was rational and was based on substantial evidence. Accordingly, we conclude that the determination and order of CAB should not have been disturbed. Concur — Murphy, P. J., Sullivan and Bloom, JJ.

Ross, J., dissents in a memorandum as follows: Under the facts of this case the use of an immutable, mechanical formula by respondent, Conciliation and Appeals Board (CAB) to establish the appropriate rental to be charged was arbitrary and capricious. I agree with the court at Special Term that additional evidence, as to the value of the furnishings and personalty in the subject apartment, should have been considered by the CAB. This action does not involve a dispute between a landlord and a tenant. Rather, this controversy is between a tenant and his subtenant, an experienced real estate lawyer, who actively participated in the negotiation and preparation of the sublease. As a matter of fact, the landlord is not a party to this action. The tenant maintains that his apartment was lavishly furnished with antiques and works of art and, therefore, he should be entitled to a greater return on these objects. In addition, the tenant asserts that any determination as to a fair rental should consider a guarantee against breakage of these valuable pieces as well as a reasonable rate of return for wear and tear. The CAB, in effect, ignored the furnishings in this apartment and, in limiting the prime tenant to a 10% increase, acted arbitrarily. This is not meant to say, or imply, that the agreed-upon rent between these parties was appropriate or inappropriate. However, to guarantee that a distinction be maintained between a sublet of an apartment that is lavishly and expensively furnished and one that is moderately and sparsely decorated, the CAB should have taken testimony regarding the value of these appointments so as to establish a reasonable formula. To utilize the allowable flat-rate increase under these circumstances was error.