■ CARL YELLON, Respondent, v REINER-KAISER ASSOCIATES et al., Appellants. STAN KRISMAN, Appellant, v CARL YELLON et al., Respondents. — In an action, *inter alia,* for declaratory relief, the appeal is from an order of the Supreme Court, Queens County (Graci, J.), dated August 7, 1981, which, *inter*

*alia,* granted plaintiff Carl Yellon's motion for summary judgment. Order affirmed, with $50 costs and disbursements. Appellants shall proffer the shares of stock together with the proprietary lease applicable thereto with regard to apartment M-37 at 2 Dartmouth Street, Forest Hills, New York, to plaintiff Carl Yellon and his wife Lori Yellon, within 10 days after service upon appellants of a copy of the order to be made hereon, with notice of entry. As of July 1, 1980 defendant Reiner-Kaiser Associates (Reiner-Kaiser) was the owner of a multiple dwelling located at 2 Dartmouth Street in Forest Hills, New York. Reiner-Kaiser is a partnership consisting of Ray Kaiser and Warren H. Reiner. Ray Kaiser is also sole owner and operator of defendant B & T Realty, the managing agent of the premises at 2 Dartmouth Street. Defendant Station Square Inn Apartments Corp. is a domestic corporation formed at the behest of Ray Kaiser and Warren Reiner, the controlling stockholders, to become the co-operative owner of the aforesaid premises. On or about June 11, 1980 and continuing until September 15, 1980, Albert W. Inglesby was an employee of B & T Realty. After negotiations with Mr. Inglesby on behalf of Reiner-Kaiser, plaintiff Carl Yellon signed a blank lease for a one-bedroom apartment at 2 Dartmouth Street, effective July 1, 1980. Yellon drew two checks payable to Reiner-Kaiser, one for the month of July, 1980 and the other for the security deposit. Both checks were indorsed and deposited by Reiner-Kaiser in its bank account. Thereafter, Yellon paid rent to Reiner-Kaiser directly, together with all other additional tenant charges he was called upon to pay by the landlord. It is not disputed that the apartment is subject to the Rent Stabilization Law. On or about September 15, 1980 Al Inglesby left the employment of B & T Realty and was replaced by Stan Krisman. Krisman is a licensed real estate broker, who, *inter alia,* acts as rental agent for Reiner-Kaiser. Krisman lives with his wife and three children in a jointly owned four-bedroom house in Plainview, New York. Krisman alleged that he is the prime tenant of apartment M-37. The blank lease signed by Yellon was returned to him at the end of July, 1980. Said lease was signed on behalf of the landlord as follows:

"REINER-KAISER ASSOCIATES, OWNER
"s/ Stan Krisman                           .
     Stan Krisman, Lessor

"s/ Carl Yellon
     Carl Yellon, Lessee."

Krisman admitted in a deposition that he never occupied apartment M-37; neither he nor his wife ever saw apartment M-37; he could not describe it, did not know how many rooms it had, or what floor it was on. He never paid any rent or security for the apartment. Ray Kaiser or Al Inglesby informed Krisman prior to his signing of the lease as "lessor" that the building was going to go co-op. Krisman was listed as a tenant in other buldings owned by Reiner-Kaiser which were also about to go co-op, although he never occupied those premises either. On or about November 14, 1980 Reiner-Kaiser obtained approval of the offering plan to convert the building at 2 Dartmouth Street, as well as other buildings owned by them, to co-operative ownership. Yellon was not offered apartment M-37 for purchase, since Reiner-Kaiser considered Yellon to be a subtenant. Yellon then commenced an action seeking, *inter alia,* to compel defendants herein to (1) recognize him as a tenant in occupancy of apartment M-37; and (2) offer him the shares of stock together with the proprietary lease applicable thereto. Krisman commenced a proceeding to dispossess Yellon and his wife as holdover tenants. By order dated August 7, 1981 Special Term granted plaintiff's motion for summary judgment, and dismissed the proceeding brought by Krisman. We agree. Title YY of the New

York City Administrative Code governs apartments subject to rent stabilization, such as the one at bar. Said title was enacted "to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health, safety and general welfare" (Administrative Code of City of New York, § YY51-1.0; see, also, § YY51-1.0.1). Section YY51-6.0 (subd c, par [9], cl [b]) provides that "the tenants in occupancy at the time of the offering shall have the exclusive right to purchase their dwelling units or the shares allocated thereto". Section 61 (subd 4, par [a]) of the Code of Real Estate Industry Stabilization Association of New York City, Inc. (Code), adopted pursuant to title YY, provides that a plan of co-operative conversion may not be declared effective until 35% of the tenants "then in occupancy" have agreed to purchase their apartments. In calculating the 35%, section 61 (subd 4, par [a], cl [v]) provides: "Purchases by the tenant of record of a subleased apartment will be included; sub-tenants will have no right to purchase unless approved by the tenant of record and only then would purchases by sub-tenants be included". Subdivision 5 of section 61 further provides that said section only applies "to tenants in occupancy and lessees of record of vacant or subleased apartments at the time of the offering, it shall not be applicable or available to subtenants". Thus, in the usual situation a subtenant does not have the right to purchase his apartment where the consent of the tenant of record or "prime tenant" is lacking. The facts present at bar, however, evidence an illegal arrangement on the part of the landlord and "prime tenant" Krisman to evade the Rent Stabilization Law. Section 62 of the Code provides as follows: "A. The stabilization rents and other requirements provided in this Code shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of dwelling units by requiring the tenant to pay or obligate himself for membership or other fees, or by modification of the practices relating to payment of commissions or other charges, or by modification of the services furnished or required to be furnished with the dwelling units or otherwise." In cases with fact patterns similar to those present here, the Conciliation and Appeals Board has held that where the "prime tenants" never occupied the subject apartments, never paid security deposits or rent therefor, and there the apartments were "sublet" by owner's agents, where the "subtenants" paid security deposits to the owner, and where the rent was billed by and made payable to the owner, not the "prime tenants", then the prime tenancies are illusory and constitute a violation of sections 61 and 62 of the Code. In such situations, the "subtenants" have been accorded the full rights of tenants under the Rent Stabilization Law and Code, including the right to purchase one's apartment which is restricted to prime tenants under section 61 of the Code (see *Sawyer v Bacquet,* Conciliation and Appeals Board Opn No. 15, 648 [March 19, 1981]; *Bartelstone v Walsh,* Conciliation and Appeals Board Opn No. 19, 629 [Feb. 25, 1982]). We adopt such reasoning in the instant case. As there is no real dispute that we are confronted with an "illusory" tenancy. Special Term properly granted summary judgment to Yellon and dismissed Krisman's proceeding to dispossess Yellon and his wife Lori as holdover tenants. Damiani, J. P., Titone, Mangano and Brown, JJ., concur.