In the Matter of Avon Furniture Leasing, Inc., Respondent,
v Emanuel P. Popolizio, as Chairman of the New York
City Conciliation and Appeals Board, et al., Appellants.

First Department, April 17, 1986

*Stanford M. Singer* of counsel *(Steven R. Lapidus* with him on the brief; *Abrams Lerner Kisseloff Kissin & Lapidus, P. C.,* attorneys), for respondent.

*Mary Ellen Cronly* of counsel *(Edward Chazin,* attorney), for New York State Division of Housing and Community Renewal, appellant.

## OPINION OF THE COURT

ELLERIN, J.

At issue in this CPLR article 78 proceeding is a finding of an "illusory tenancy" by the New York Conciliation and Appeals Board (CAB) which has been vacated by Special Term.

Proceedings were initiated before the CAB in March 1983 when David Works, who resided in apartment PH-C at 345 East 73rd Street pursuant to a "sublease" with petitioner Avon Furniture Leasing, Inc., filed a complaint alleging a rent and security overcharge and a "phony and illusory sublet".

The facts are essentially undisputed. The owner of the subject building is a member of the Rent Stabilization Association and the apartment unit involved is subject to the Rent Stabilization Law (Administrative Code of City of New York § YY51-1.0 *et seq.).* The petitioner, Avon Furniture Leasing, Inc. (Avon), is in the business of leasing, furnishing and subletting residential apartments and it leases at least seven apartments in the building here involved for that purpose.

On June 16, 1980, Avon entered into a lease with the owner for apartment PH-C. The prior tenant's lease had expired on May 31, 1980 with a stabilized rent at that time of $404.61. Avon's lease provided for a three-year term, commencing June 15, 1980, with escalating rentals of $695 per month during the first year, $745 per month during the second year and $856 per month during the last year. The standard form lease contained an additional clause specifying that "tenant has the right to sublet notwithstanding paragraph 18 of this lease" and annexed to the lease, and to the leases covering several other apartments in the building rented by Avon, was a letter

agreement signed by an officer of Avon stating that the apartment "will be our secondary residence * * * It is agreed and understood that this apartment is not subject to the Rent Stabilization Guidelines of New York City". Avon furnished the apartment and listed it with various brokers, one of whom effected Works' subsequent rental from Avon of PH-C.

Works took possession of the furnished apartment in May 1982 pursuant to an extensive written lease with Avon covering a one-year period, from May 7, 1982 through May 6, 1983, at a monthly rental of $1,350 plus a $500 security deposit and prepayment of $1,500, "part of last mos. rent". The rider attached to the agreement expressly denominated the rental as a "sublease" and reserved to Avon the right to be "the prime tenant" should the building become cooperative or condominium, with the subtenant agreeing to relinquish all rights to the premises in that event. Also appended to the leasing agreement was a listing of the furnishings of the apartment, which may be characterized as modest. Works paid the rent and security directly to Avon in accordance with the "sublease".

A hearing was held before the CAB on August 8, 1983 at which the complainant Works testified. He asserted that the apartment was used as his primary residence and he described and produced photographs of the furnishings. The attorneys for both Avon and the owner of the building were also present at the hearing and the leases for the various apartments rented by Avon in the subject building were produced. No evidence as to any relationship between Avon and the owner, other than the leases, was adduced. It may be noted that shortly before the hearing, on July 19, 1983, an "eviction" plan for cooperative conversion of the building had been submitted to the office of the Attorney-General.

In an opinion, dated August 25, 1983, the CAB found that the apartment was in fact Mr. Works' primary residence, that Avon had concededly never occupied nor intended to occupy the subject apartment but had rented it only for purposes of furnishing and "subletting" it at a rent considerably in excess of the lawful stabilized rent, that it was in the business of renting and subletting apartments in this fashion and that, based on the record, the "prime tenancy" was illusory and that the practice constituted an evasion of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code) in violation of section 62 (A). The order of the CAB directed that Works be granted all the rights of a

"prime tenant" under the Rent Stabilization Law including the right to purchase the shares allocated to the apartment upon the acceptance of a cooperative conversion plan for filing and also directed a rollback of the rent and a refund of excess rent already paid.

Avon commenced the instant article 78 proceeding seeking to annul the CAB's determination. Special Term granted the petition finding that since the record indicated no collusion, scheme or relationship between Avon and the owner of the building other than landlord and tenant, and there being no privity or relationship whatsoever between Works and the owner, it was not legally justifiable to conclude that Avon's was an "illusory tenancy" or that the legal tenant of the apartment in question is Works, stressing the express language of the "sublease" which made Works fully aware that he had no right to purchase the shares for the apartment if the building went cooperative. Special Term also found the Board's determination that Avon was entitled to only a 10% increase in the stabilized rent as compensation for the furnishings was not supported by substantial evidence and was arbitrary and capricious.

We find that Special Term erred in both respects and that the record amply provides a rational basis for the CAB's determination that Avon was an illusory tenant and that the furnishings did not entitle it to more than the statutorily authorized 10% as compensation for the furnishings.

The rent stabilization laws were enacted within the context of an extremely serious housing shortage, particularly for those only able to afford reasonable rents, and are designed "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices". (Administrative Code § YY51-1.0.)

Toward that end the Rent Stabilization Code expressly provides, in section 62 (A) that: "The stabilization rents and other requirements provided in this Code shall not be evaded, either directly or *indirectly,* in connection with the renting or leasing or the transfer of a lease of dwelling units". (Emphasis added.)

The provisions of the Rent Stabilization Law represent a pragmatic balance between affording the owners of properties adequate periodic rent increases to enable them to properly maintain their properties in the face of rising costs, while at

the same time affording to tenants an assurance against unreasonable escalations in rent and also various other rights and protections, including what has become the increasingly valuable right to purchase their apartments in the event of cooperative conversion. The attempts which have been made to upset this balance, and to pervert the beneficial purpose of the law, have been varied and creative and ofttimes cynically cloaked in a mantle of misleading nomenclature and fictitious characterizations of tenancy status. It is in response to such schemes that the law of illusory tenancy evolved. *(See, Hutchins v Conciliation & Appeals Bd.,* 125 Misc 2d 809 [M. Evans, J.], for a most excellent and comprehensive discussion of this development of the law in this area.)

The term "illusory tenant" has been used to describe a party who, while assuming the guise of a "prime tenant", enters into a sublease arrangement which has the effect, directly or indirectly, of evading the requirements of the Rent Stabilization Law. In such case, the subtenant will be accorded the full protection of the rent stabilization laws. *(See, e.g., Yellon v Reiner-Kaiser Assoc.,* 89 AD2d 561.)

An illusory tenancy has been found in situations where, as here, the "prime tenant" rents an apartment, or apartments, which it never intends to occupy but rather rents it for the purpose of subleasing for profit or otherwise depriving the subtenant of rights under the Rent Stabilization Law *(Walsh v Popolizio,* 104 AD2d 1064, *affg without opn* NYLJ, Oct. 14, 1982, p 7, col 4 [Sup Ct, NY County, Rettinger, J.]; *Hutchins v Conciliation & Appeals Bd., supra; Limebud Realty Corp. v Conciliation & Appeals Bd.,* NYLJ, Mar. 16, 1983, p 5, col 1 [Sup Ct, NY County, Edwards, J.]; *Conti v Citrin,* NYLJ, Aug. 14, 1985, p 11, col 2 [Sup Ct, NY County, Greenfield, J.]).

The determination by the CAB in this case that Avon was an "illusory tenant" is clearly supported by substantial evidence. It is uncontradicted that petitioner never intended to reside in the subject apartment and that it rented it solely for purposes of subleasing it for profit at an illegal rent in contravention of the Rent Stabilization Law. Moreover, the terms of the sublease establish, without question, the intention to deprive the "subtenant" Works of rights under the Rent Stabilization Law such as primary residency and rights to participate in any future cooperative conversion.

Special Term erroneously concluded that an illusory tenancy may be found only where there is some collusion be-

tween the owner of the property and the party denominated the "prime tenant". While one who acts collusively with, or as an agent for, the owner or landlord in entering into a sublease as a means of permitting the landlord to subvert the rent laws, is clearly an "illusory tenant", a finding of such collusion is not an essential prerequisite to a determination that the tenancy is illusory. The consequences of a practice such as is here in issue are certainly no less destructive of the stated purpose of the law "to prevent exactions of unjust, unreasonable and oppressive rents" merely because it is carried on by someone other than the landlord and without the collusion of the landlord.

In addressing precisely this issue, the Appellate Term (1st Dept) aptly noted that: "The integrity of the rent stabilization scheme is obviously undermined if tenants, who themselves are the beneficiaries of regulated rentals, are free to sublease their apartments at market levels and thereby collect the profits which are denied the main landlord. The rent payable by a subtenant is to be 'consistent with the provisions of the Rent Stabilization Law' ". (Continental Towers Ltd. Partnership v Freuman, 128 Misc 2d 680, 681, lv denied Opn No. M-2353, 1st Dept, June 11, 1985.)

Profiteering enterprises such as petitioner's, in the name of a "prime tenant", improperly remove the most desirable apartments from the open market, at a time when the rental housing shortage is as grave as ever, and improperly manipulate rents and the other protections which the rent stabilization laws seek to extend to legitimate tenants. Such violations of section 62 (A) of the Code cannot be permitted and require that the illusion of such "prime tenancies" be exposed as was here done by the CAB.

While an absence of a finding of collusion between Avon and the landlord in no way diminishes the validity of the Board's finding of an "illusory tenancy" here, it may parenthetically be noted that the record does, in fact, establish that the owner derived substantial benefits from the scheme and was aware of the nature of Avon's activities. The "prime lease" provided for a rent to the landlord well in excess of the lawful stabilized rent. This, in conjunction with the blanket right to sublet granted to the "prime tenant" Avon, the somewhat astonishing statement in the "prime lease" that the apartment was not subject to the Rent Stabilization Guidelines and the waiver of rights to cooperative shares in the event of the cooperative conversion, all demonstrate that the

landlord, too, was seeking to evade the Rent Stabilization Law and acquiesced in Avon's activities toward that end.

Special Term also erred in rejecting the Board's determination on the issue of the amount of rent that could properly be charged here. It was established that Works was obliged to pay $1,350 per month at a time when Avon was paying the landlord $856 per month. While the fact that the apartment was furnished did provide a basis for charging a rent higher than the stabilized rent, the record supports the Board's conclusion that such additional charge was to be limited to the normally authorized 10% allowance. The only evidence submitted here indicated that the furnishings were of an ordinary, modest functional type. Avon submitted no evidence whatsoever as to the value or nature of the furnishings that might have established that the apartment was "lavishly and expensively furnished" within the rule of *Matter of Krantz v Conciliation & Appeals Bd.* (57 NY2d 915, *revg* 86 AD2d 801 on dissenting memorandum of Ross, J.). The Board's decision in this regard certainly cannot be said to be without a rational basis.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Grossman, J.), entered August 3, 1984, should be reversed, on the law and the facts, the petition denied, the proceeding dismissed and the determination of the Conciliation and Appeals Board which found the petitioner to be an "illusory tenant" and granted complainant-respondent-subtenant Works all of the rights reserved to a tenant under the Rent Stabilization Law should be reinstated, without costs.

KUPFERMAN, J. P., SULLIVAN, ROSS and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on August 3, 1984, unanimously reversed, on the law and the facts, the petition denied, the proceeding dismissed and the determination of the Conciliation and Appeals Board dated August 25, 1983, which found the petitioner to be an "illusory tenant" and granted complainant-respondent-subtenant Works all of the rights reserved to a tenant under the Rent Stabilization Law is reinstated, without costs and without disbursements.