LOTTIE BRUENN, Respondent, v ELISABETH-ANNE COLE et al., Appellants, et al., Defendant.

First Department, April 4, 1991

## APPEARANCES OF COUNSEL

*Allan Greenstein (Leslie I. Levine* with him on the brief), for appellants.

*Michael E. Schoeman* of counsel *(Beth L. Kaufman* with him on the brief; *Schoeman, Marsh & Updike,* attorneys), for respondent.

*Michael E. Schoeman* of counsel *(Kurzman, Karelsen & Frank,* attorneys), for Park and 93rd Owners Corp., *amicus curiae.*

## OPINION OF THE COURT

RUBIN, J.

 This appeal raises the issue of the criteria to be applied in determining whether a tenancy is bonafide or illusory. This court concludes that the extent of protection intended to be afforded by the rent regulatory statutes, the intent of the asserted tenant to resume occupancy of the premises and the degree of control exercised by the tenant are relevant factors to be considered in assessing the nature of the tenancy.

Defendant Elisabeth-Anne Cole (Elisabeth) became the tenant of apartment 11A1 located at 1175 Park Avenue, New York, New York, pursuant to a lease dated May 29, 1968. At the time her tenancy began, the building was owned by Park Avenue Equities, Inc. Elisabeth's father, Alexander Cole, and uncle, Daniel Cole, were the sole shareowners and respectively, president and secretary/treasurer of the corporation. The lease was signed on behalf of Elisabeth by her mother, Madeleine Cole, who took an active part in the management of the building on behalf of her husband and brother-in-law. Elisabeth occupied the premises pursuant to an informal agreement between the Cole brothers that their children could occupy apartments in the building. Instead of collecting rent from their children, a debit was entered against the total income due to each of the brothers for every month that an apartment was occupied by his child. The amount of the debit was $500 for each apartment at the time Elisabeth entered into her lease and was increased to $800 by early 1971 and, in

stages, to $1,000 by April 1979. This arrangement continued after the brothers' interests in the building were transferred to Park Avenue Equities, a partnership.

The term of Elisabeth's lease was five years, ending May 31, 1973, with an option to renew for another five-year period ending May 31, 1978. The record contains no indication that the option to renew was ever exercised and, in any event, Elisabeth left New York in January 1971 to study at the University of Arizona in Tucson. She never again resided in the subject premises nor executed any agreements with either the owner or plaintiff.

Plaintiff Lottie Bruenn began residing in the apartment pursuant to a lease dated April 20, 1971 which ran for a three-year term commencing June 1, 1971 and ending May 31, 1974. This lease was also signed by Madeleine Cole on behalf of her daughter. Upon expiration of the lease term, according to Madeleine Cole's testimony, plaintiff asked to remain in the premises as a month-to-month tenant. Plaintiff, however, stated that when the lease expired, "I didn't know quite what to do," and merely acquiesced in this arrangement. In any event, no further document was executed by plaintiff regarding her tenancy until January 1980 when she signed a statement acknowledging that she occupied the apartment as the month-to-month tenant of defendant Elisabeth-Anne Cole and agreed to vacate the premises on 90 days' written notice. Again, it was Madeleine Cole who solicited the acknowledgment, which was signed by plaintiff without consultation with counsel and with the understanding that, if she failed to sign it, she could be evicted upon 30 days' notice. At this time, Elisabeth was given a new lease by Park Avenue Equities commencing February 1 and ending August 31, 1980.

The building was ultimately the subject of a cooperative conversion. It was sold by the Cole brothers' partnership, Park Avenue Equities, on February 28, 1980 and eventually acquired by 1175 Park Avenue Tenants Corporation, through an intermediary. It was only then that checks were issued on Elisabeth's behalf, again by Madeleine Cole from a joint account maintained with her daughter, to the managing agent for the cooperative corporation.

In the complaint, plaintiff asserts the right to purchase the shares allocated to her apartment in the offering plan on the ground that she is the tenant in occupancy. Supreme Court found that Elisabeth was entirely disinterested in the disposi-

tion of the apartment and, since vacating the premises in January 1971, resided in various locations: in Tucson, while attending the University of Arizona; in New York with her parents; in Richfield, Connecticut; in Wayne, New Jersey, in a house which she owned; and, finally, in Westport, Connecticut. The rent received from plaintiff was deposited by Madeleine Cole in the joint account she maintained with Elisabeth. Throughout the time the building remained the property of the Cole brothers, none of the deposited money was ever paid to the entity which held title. The court concluded that defendant Elisabeth-Anne Cole was merely an illusory tenant. Therefore, it set aside the transfer of shares in apartment 11A1 to Elisabeth and declared that plaintiff Lottie Bruenn acceded to the rights of tenant in possession. The Rent Stabilization Law in effect at the time of the offering provided that "tenants in occupancy" have the exclusive right to purchase the shares allocated to their dwelling units (Rent Stabilization Law *[Administrative Code of City of New York]* former § YY51-6.0 [c] [9] [b]; *Yellon v Reiner-Kaiser Assocs.,* 89 AD2d 561).

A case presenting the issue of illusory tenancy requires that the court examine the bona fides of the tenancy of the person asserted to hold the status of prime tenant over the party in occupancy as subtenant. While collusion by the asserted prime tenant with the landlord to defeat the rights of the occupant is one indication of an illusory tenancy, it is not an element which is essential to such a determination *(Matter of Avon Furniture Leasing v Popolizio,* 116 AD2d 280, 284-285, *lv denied* 68 NY2d 610). Similarly, other factors enumerated by the courts should be regarded merely as indicia that a tenancy is illusory and not as prerequisites to such a finding.

As an aid to interpreting the facts presented by this case, several related concepts of landlord-tenant law are pertinent. It has been observed that, in defining the scope of statutes regulating housing, "regulatory protection should not be available where the tenant's claim to the subject premises is based on less than the need for a place to call home" *(Park S. Assocs. v Mason,* 123 Misc 2d 750, 753, *affd* 126 Misc 2d 945). Rent regulatory statutes universally exempt from their operation dwelling units "not occupied by the tenant, not including subtenants or occupants, as his primary residence" (Rent Stabilization Law [Administrative Code of City of New York] § 26-504 [a] [1] [f]; *see also,* McKinney's Uncons Laws of NY § 8605 [Local Emergency Housing Rent Control Act § 5; L

1962, ch 21, § 1 as amended]; New York City Rent and Rehabilitation Law [Administrative Code of City of New York] § 26-403 [e] [2] [i] [10]). While no finding as to primary residence was sought or made, there is no reading of the facts in this case which would permit the conclusion that the subject apartment was Elisabeth's primary residence and, therefore, there is no philosophical or equitable basis for applying the Rent Stabilization Law to protect her tenancy.

■ Another guide to the relationship of the parties is the common-law distinction between subletting, which the Rent Stabilization Law currently permits, and assignment, which it does not (Rent Stabilization Law § 26-511 [c] [12]). The distinction turns on whether the tenant possesses the requisite *animus revertendi* or intention to return to the premises. Functionally, this is reflected by whether the lessee has parted with his entire interest in the leasehold, in which case the transaction is an assignment, or conveyed less than the balance of the leasehold, retaining a reversionary interest, in which case it constitutes a sublease *(New Amsterdam Cas. Co. v National Union Fire Ins. Co.,* 266 NY 254, 259-260). Such a litmus test is not applicable to the sphere of rent-regulated housing, however, because the requirement for automatic lease renewals has eroded the sharp distinction established under common law between leasehold and freehold *(see,* Garner, A Dictionary of Modern Legal Usage, at 252). Nevertheless, *animus revertendi* remains the criterion by which a tenant is judged to have conveyed a sublease and retained a reversionary interest. In this regard, the length of time for which the tenant has relinquished occupancy of the premises remains a salient consideration. The court notes that, in the current Rent Stabilization Law, the duration of a sublease is expressly limited to two years (Administrative Code of City of New York § 26-511 [c] [12]). While the matter of appeal arose prior to the amendment of the statute (Omnibus Housing Act, L 1983, ch 403), the two-year limit which it imposes may be construed as a statutory expression of what constitutes a reasonable time period for a sublease. In any event, given the number of years which passed between the date Elisabeth relinquished occupancy of the apartment and the time the issue of the nature of her tenancy arose, she may fairly be said to have abandoned any reversionary interest in the leasehold.

■ The statement signed by plaintiff in January 1980, acknowledging her subtenancy, need not detain us. A sublease

can convey no more than the rights afforded to the tenant *(Mann Theatres Corp. v Mid-Island Shopping Plaza Co.,* 94 AD2d 466, 471, *affd* 62 NY2d 930). Irrespective of the perception of the parties, by the date plaintiff signed the acknowledgment, Elisabeth retained no interest in the tenancy which could be conveyed by way of a sublease.

■ A final factor in determining the relationship between the parties in this case is the degree of control over the subject premises exercised by the tenant vis-à-vis the landlord or the landlord's agent. Under the facts adduced at trial, it is clear that Elisabeth's role in its conveyance was entirely passive. She signed none of the documents affecting possession of the apartment, not even the original lease upon which her claim to tenancy is predicated. The rent was paid for by her father, a principal in the building until its sale in January 1980, by means of a bookkeeping arrangement with his brother. As Supreme Court emphasized, after leaving New York in 1971 to pursue her studies in Arizona, Elisabeth became entirely disinterested in the disposition of the subject apartment. It was her mother, who managed the building, who signed both the original lease to Elisabeth and the sublease to plaintiff. It was Madeleine who collected the rent and deposited it in a joint account. The control which Madeleine exercised over the apartment, her relationship to the owners, both personal and professional, and the utter passivity of Elisabeth Cole throughout, leave no doubt that it was not Elisabeth but the landlord which exercised dominion and control over the premises. Appearances notwithstanding, the facts compel the finding that a landlord-tenant relationship existed between plaintiff and Park Avenue Equities and that plaintiff was the tenant in occupancy entitled to purchase the cooperative shares allocated to her apartment within the contemplation of the Rent Stabilization Law (Administrative Code of City of New York former § YY51-6.0 [c] [9] [b]). The lease purportedly given by Park Avenue Equities to Elisabeth in January 1980, is of no force and effect. It is merely a belated attempt to elevate form over substance in the effort to document her claim to tenancy.

Finally, defendants' contention that Elisabeth's tenancy may not be found to be illusory because it does not strictly comport with the definition set forth in *Matter of Badem Bldgs. v Abrams* (70 NY2d 45, 52) is without merit. In that case, as here, the illusory subtenancies were created for the purpose of securing to the alleged prime tenants the right to

subscribe to a plan of cooperative ownership. That a purported prime tenant may have occupied the premises at some time does not, as defendants assert, preclude a finding that the tenancy is illusory. As the Court of Appeals observed, "both the courts and the administrative agencies charged with overseeing rent stabilization have readily formulated remedies to prevent the use of illusory tenancies to evade the provisions of the Rent Stabilization Code and to prevent illusory tenants from violating the rights of bonafide tenants occupying stabilized property" *(Matter of Badem Bldgs. v Abrams, supra,* at 53). The instant appeal presents a clear example of an attempt to evade operation of the Rent Stabilization Law, and the remedy fashioned by Supreme Court finds ample foundation in both statutory and common law.

Defendants' other contentions have been examined and found to be without merit.

Accordingly, the amended judgment of the Supreme Court, New York County (Walter Gorman, J.), entered July 20, 1990 which, after a bench trial, *inter alia,* declared plaintiff to be the tenant in possession of the subject apartment having the right to purchase cooperative shares allocated thereto, should be affirmed, without costs. The appeal from the judgment entered December 18, 1989 is dismissed as superceded by the amended judgment, without costs *(Goldspinner v Goldspinner,* 52 AD2d 837).

ROSENBERGER, J. P., ELLERIN, WALLACH and SMITH, JJ., concur.

Amended judgment of the Supreme Court, New York County, entered on July 20, 1990, unanimously affirmed, without costs. The appeal from the judgment of said court, entered on December 18, 1989, is unanimously dismissed as superceded by the aforesaid amended judgment, without costs.