McCooe, J.
(dissenting). I respectfully dissent. The issue is whether an illusory tenancy was created. An “illusory tenant” is defined in Hutchins v Conciliation & Appeals Bd. (125 Misc 2d 809, 811 [1984]), as “a lessee of a residential premises who does not occupy the premises for his own residential use and who subleases it for profit, not because of necessity or other legally cognizable reason.” (See also, Badem Bldgs. v Abrams, 70 NY2d 45, 52 [1987].) According to the Hutchins court, the term “illusory tenant” has been used to describe two sitúa *505 tions. The first “involves a strawman, a ‘tenant’, real or imaginary, who, as the alter ego of the landlord, subleases the apartment as a means of permitting the landlord to circumvent or evade his obligations under the rent laws.” (Hutchins v Conciliation & Appeals Bd., supra, at 813.) The second “involves a prime tenant who rents stabilized or controlled apartments and then subleases them as a business.” (Supra, at 814.) An example of the first situation may be found in Badem Bldgs. v Abrams (supra), while the second situation parallels Matter of Avon Furniture Leasing v Popolizio (116 AD2d 280 [1986]). This case parallels neither of the two situations described in Hutchins and the majority is creating a third situation.
It is undisputed that the prime tenant Spielberg actually occupied the apartment from the commencement of the lease in 1963 to approximately August or September of 1974 when his acting career took him to California and an illegal sublet was entered into with the Murneys. It is also undisputed that Spielberg was not acting as the alter ego of the present or former landlord. The present landlord did not become the owner of the premises until 1991 or 1992.
Spielberg entered into an illegal sublet with the Murneys at a monthly rental of $425 who resided in the subject premises until March 1989. During their occupancy all rent payments were mailed to Spielberg in California. In January of 1990 Spielberg entered into a month-to-month sublet with respondent Nancy Donahoe at a purported rent of $900 per month which increased over time to $1,080. Donahoe also made all payments by mail to Spielberg in California. She testified that she had various roommates with whom she split the rent but was able to produce only 18 money order receipts (out of 65 months) in the amounts of $490 and $513 which purportedly represented her share of the rent payments mailed to Spielberg in California. None of the receipts bear any notations as to the reason for the payments nor do they exceed the legal rent. One of Donahoe’s former roommates from December 1992 to December 1994 produced three checks to Spielberg’s order which are represented to be rent payments but bear no notations. Two of the checks, each in the sum of $1,028 are dated October 1 and November 1, 1994. The third check, in the sum of $650, is dated January 1, 1994. The correct date from the clearance house stamp appears to be 1995, which is one month after he ceased living in the apartment.
Applying the legal criteria for creating an illusory tenancy the defining elements are not present. We are actually dealing *506 with an illegal long-term sublet. This fact pattern parallels several decisions of this court where it held that the facts neither supported an illusory tenancy nor warranted application of that doctrine so as to confer independent tenancy status on the subtenant, especially where as here the landlord neither consented to the tenancy nor took any affirmative acts to accept the subtenant as tenant in her own right. (See, West 46 Equities v Henry, NYLJ, Sept. 8, 1997, at 26, col 6 [App Term, 1st Dept]; 390 W. End Assocs. v Kornbluth, NYLJ, Nov. 16, 1990, at 24, col 6 [App Term, 1st Dept]; Blum v Curtis, NYLJ, May 26,1989, at 21, col 1 [App Term, 1st Dept]; Azadour Realty Corp. v Chavijo, NYLJ, Sept. 15, 1988, at 17, col 6 [App Term, 1st Dept].)
The tenant’s principal argument for affirming the finding of an illusory tenancy is that Spielberg was engaged in profiteering. This court held in Blum v Curtis (supra) that not every case which has elements of rent overcharge necessarily requires a finding of illusory tenancy or a finding that the subtenant should be accorded stabilized status.
The evidence as to profiteering by Spielberg should be examined. The Murneys resided in the subject apartment from September 1974 to March 1, 1989 at a rental of $475 per month. The Division of Housing and Community Renewal registration shows the maximum collectible rent for the subject apartment on January 1, 1989 as $500.90 and the landlord’s records establish that Spielberg paid this amount. Why would a person allegedly interested in profiteering only charge $475 per month and continue with this subterfuge unless he, an actor, harbored some expectation, fanciful or not, of returning to New York. The rent was increased for the new subtenant Donahoe who took the apartment on a month-to-month basis and shared the apartment with numerous roommates. The documentary proof is inadequate as to how much she actually paid as rent although she testified that she was initially charged $900 per month although the maximum collectible rent was approximately $712.
The last and most important point is the role of the landlord. There is no support in the record that the landlord or its predecessor knew of the illegal sublet, colluded with Spielberg or profited thereby. If it did, Spielberg and the sublessees would not have had to engage in the subterfuge of mailing the rent checks to Spielberg in California who then sent his check in payment for the rent to the landlord. Pragmatically, what landlord in New York City wouldn’t be glad to be rid of á rent-controlled tenant?
*507 The question then is whether some collusion or profiteering by the landlord must be shown in order to find an illusory tenancy. The majority cites Matter of Avon Furniture Leasing v Popolizio (116 AD2d 280, supra) for the proposition that it does not. The landlord Avon was in the business of leasing and subletting apartments and leased at least seven apartments in the subject premises from the owner and signed a letter agreement with the owner that these apartments would not be subject to rent stabilization guidelines. Avon subleased one of the apartments to the tenant at approximately double the rent ($700-$l,350) without ever taking occupancy of an apartment with “modest furnishings”. Subsequently a coop conversion plan was filed and the issue as to entitlement to the apartment came before the Conciliation and Appeals Board (CAB) on the tenant’s complaint. The Appellate Division (at 284) found an illusory tenancy “where as here, the ‘prime tenant’ rents an apartment, or apartments, which it never intends to occupy but * * * rents it for the purpose of subleasing for profit or otherwise depriving the subtenant of rights under the Rent Stabilization Law.” The Court goes on to state (at 285) that a finding of collusion between the owner and prime tenant “is not an essential prerequisite to a determination that the tenancy is illusory * * * While [the] absence of* * * collusion between Avon and the landlord in no way diminishes the validity of the Board’s finding of an ‘illusory tenancy’ here, it may parenthetically be noted that the record does, in fact, establish that the owner derived substantial benefits from the scheme and was aware of Avon’s activities.” The owner received rent in excess of the lawful stabilized rent, inserted a lease clause that the apartment was not subject to rent stabilization and waived the right to ownership in the event of a coop conversion.
The distinctions between Avon (supra) and this case are multiple. Avon was an article 78 proceeding where the Appellate Division affirmed the finding of the CAB that an illusory tenancy was created, although the board found that there was no collusion. It is clear that the board was in error and that there was collusion as spelled out by the Appellate Division in its decision. I submit that in view of the clear evidence of collusion and benefit to the owner as found by the Court, the statement that collusion between the owner and tenant was not a prerequisite was dicta. In any event, the Court did find that the owner was aware of the actions of the prime tenant and benefitted thereby. As distinguished from Avon, Spielberg was not in the business of renting apartments, resided in the apart *508 ment, initially leased at a rental roughly equivalent to the maximum collectible rent and maintained the lease not for business purposes but for an unrealized possibility that he might return to New York. Finally as in Bruenn v Cole (165 AD2d 443), the dispute was between two tenants and not a landlord over the right to a cooperative apartment and the equities did favor the sublessee. The facts in Bruenn are dissimilar to this case. The subject apartment was in a building owned by the tenant’s family and the lease arrangements were negotiated by the tenant’s mother, rent was not paid and the tenant moved out and never returned to the apartment. The clear distinction is that the owner knew that the sublessee was not the tenant since the sublease was entered into by the wife of the owner who was the mother of the tenant.
The question is whether there is any legal or equitable basis to find an illusory tenancy here where the landlord never participated in, benefitted from or had knowledge of the illegal sublease and where Spielberg actually took possession and subleased without any intention to profiteer and had at least a possible future need for the apartment.
I would reverse and grant a judgment of possession to the petitioner landlord.
Ostrau, P. J., and Freedman, J., concur; McCooe, J., dissents in a separate memorandum.