OPINION OF THE COURT
Cyril K. Bedford, J.
Petitioner, 270 Riverside Drive, Inc. (petitioner), commenced this holdover proceeding against respondents, Pamela Wilson, also known as Pamela Ryckman, Thomas Ryckman (respondents), and respondent undertenants, Tina Pelikan and Claire Stefani (respondent subtenants), seeking possession of apartment 10-D at 270 Riverside Drive, New York, New York 10025 (premises). Petitioner alleged respondents had sublet or assigned the premises without petitioner’s permission. Respondents, the tenants of record, have not appeared in this proceeding.
Prior to trial, petitioner and respondent subtenants entered into a stipulation dated October 21, 2001, wherein it was acknowledged and agreed that the respondents had permanently vacated the premises on or about August 1993 and that respondent subtenants have been in possession of the premises since. This stipulation is binding between petitioner and respondent subtenants, but not binding on respondents as they were not signatories. Respondents are the tenants of record of the premises and named parties. The court is required to make a finding with respect to them as to the cause of action pleaded in this proceeding.
The trial of this holdover proceeding was held on September 25, 2002 (tape No. 63168; counter Nos. 1422-4577). The matter was adjourned to October 9, 2002 for submission of posttrial briefs and again adjourned to October 29, 2002 for reply briefs.
The court makes the following findings of fact and conclusions of law, based on the credible testimony of the witnesses and the evidence presented:
Petitioner is the owner and landlord of the premises. The building is a multiple dwelling and is duly registered with the *46 Department of Housing Preservation and Development. Respondents entered into possession of the premises pursuant to a written lease agreement on or about April 15, 1986 (petitioner exhibit 6). The premises is subject to rent stabilization and is properly registered with the Division of Housing and Community Renewal. The monthly rent is currently $1,562.52 (petitioner exhibit 13).
Respondents sought and received permission from petitioner’s predecessor in interest to sublet the premises to their friend, respondent subtenant Tina Pelikan, for the period August 1993 to August 1995. Respondent subtenant, Tina Pelikan, signed a two-year sublease with respondents (petitioner exhibit 6). After the sublease expired she continued to reside in the premises. In 1998, respondent subtenant, Claire Stefani, moved into the premises.
During the entire tenancy of respondents, renewal leases were in the name of respondents and executed by respondents. Respondent subtenants paid their monthly rents to respondents. Respondents made monthly rent payments to petitioner by their own personal checks. The Con Edison electric bills were left in the name of respondents. When repairs were effectuated in the premises in 1998, the person who signed for same was respondent Pamela Wilson (see petitioner exhibit 17).
Real Property Law § 226-b grants a tenant the right to sublet his/her apartment subject to the written consent of the landlord in advance of the subletting. The right to sublet in a rent-stabilized premise is also subject to the applicable provisions of rent stabilization. Rent Stabilization Law of 1969 (Administrative Code of City of NY [RSL]) § 26-511 (c) (12) (f) provides a tenant may not sublet an apartment for more than a total of two years including the term of the proposed sublease out of the four-year period preceding the termination date of the proposed sublease. Based upon the facts shown at trial, petitioner has proven the prima facie case that respondents have sublet the premises after the legal sublet without petitioner’s consent and in contravention of RSL § 26-511 (c) (12) (f).
Respondent subtenants claim they are entitled to be the tenant of record based upon the five affirmative defenses raised in their answer. Due to their similarity there are effectively only two distinct defenses presented. They are as follows: (a) petitioner and its predecessors knew of respondent subtenants’ occupancy and originally consented to the sublet. Respondent *47 subtenants relied on this knowledge and consent to their occupancy and gave up other living opportunities and therefore the proceeding should be dismissed under the doctrines of waiver, estoppel, laches and consent and/or the running of the statute of limitations (CPLR 213). And (b) Pamela Wilson and Thomas Ryckman are illusory tenants.
Waiver, Estoppel, Laches, Consent and Statute of Limitations
The right to sublet in a rent-stabilized apartment is not a private right between two parties that is subject to waiver, estoppel, reliance, or the passing of the statute of limitations in bringing an action for violation of lease. Rather, it involves public policy in the application of a rent regulatory scheme which cannot be changed due to the individual acts of parties. Respondent subtenants’ arguments concerning CPLR 213, waiver, estoppel, laches and consent by petitioner to the illegal sublet are not relevant. (Rima 106 v Alvarez, 257 AD2d 201 [1999].) In Rima, the lease between the parties conferred to the tenants the unlimited right to sublet. The Appellate Division, First Department, held this is in direct violation of Real Property Law § 226-b which was enacted to meet the continued public emergency in housing. The Court noted that it was not the purpose of the Rent Stabilization Law to create a class of mini-landlords and found the clause allowing the unlimited right to sublet null and void and unenforceable.
It cannot be successfully argued that petitioner created an implied tenancy with respondent subtenants waiving its right to now contest their occupancy in the premises. Initially, the court notes there was no surrender of the premises to petitioner by respondents. As such, petitioner could not establish a landlord-tenant relationship with respondent subtenants as the relationship with respondents was still extant. Although in the stipulation dated October 21, 2001, between the respondent subtenants and petitioner, it is acknowledged that respondents vacated the premises on or about August 1993, respondent subtenants in no real way communicated this fact to petitioner prior to the date of this stipulation. Respondent subtenants’ actions during their occupancy of the premises cannot reasonably have led petitioner to surmise that respondents were no longer tenants and that respondent subtenants became the successor tenants. Respondent subtenants never asked for a lease in their name. No rent was ever paid in the respondent subtenants’ name. All renewal leases were signed by respondents. When repairs were effected in the apartment in 1998 the prime tenant Pamela Wilson signed off on same. A *48 landlord-tenant relationship cannot be implied where the conduct of the parties negate its existence. (Stern v Equitable Trust Co. of N.Y., 238 NY 267.) The fact that the respondent subtenants were seen in the building and may have been known to the building personnel as occupants does not give rise to the presumption that petitioner was on notice that respondents no longer maintained their interest in the premises.
The testimony of Ms. Stefani that she was introduced to the doormen as a “roommate” created no rights of tenancy or notice to petitioner. Ms. Stefani’s collecting money to pay for a “tenant hired doorman” created no tenancy rights in her. There is nothing in the record to indicate petitioner was made aware of, or had knowledge of this activity — it was a tenant organized collection of money. Additionally, the argument by respondent subtenants that the landlord’s change of the billing process for rents created some rights of tenancy in respondent subtenants is devoid of any merit. In the absence of an intention to create a landlord-tenant relationship, none is created. (104 Div. Ave., HDFC v Lebovits, NYLJ, Mar. 30, 2001, at 22, col 1 [App Term, 2d Dept].)
Respondent subtenants’ reliance on waiver is not clearly presented. The waiver argument seems to be based upon some equitable principal and not stemming from a contract or lease. Respondent subtenants cannot claim waiver from respondents’ lease as they are not privy to the lease. The waiver argument must fall because even if waiver did apply to respondent subtenants, the most petitioner could be said to have waived is the right to contest respondent’s continuation of the sublet. This would necessarily be in violation of RSL § 26-511 (c) (12) (f) and Rima.
Illusory Tenancy
In determining respondent subtenants’ affirmative defense of illusory tenancy, it is constructive to review the leading controlling cases concerning illusory tenancy. In Matter of Avon Furniture Leasing v Popolizio (116 AD2d 280 [1st Dept 1986]), which concerned the right to subscribe to a plan of cooperative ownership, the Court discussed the rationale behind the development of the law of illusory tenancy. The Court described the term “illusory tenant” as one who while assuming the guise of a prime tenant enters into a sublease arrangement which has the effect, directly or indirectly, of evading the requirements of the Rent Stabilization Law. The Court found an illusory tenancy is indicated where the prime tenant *49 rents an apartment, which it never intends to occupy but rather rents it for the purpose of subleasing for profit or otherwise depriving the subtenant of rights under the RSL. It determined that a finding of collusion between the owner of the property and the prime tenant is not an essential prerequisite to finding an illusory tenancy. The reason being that the stated purpose of the RSL to prevent unjust, unreasonable and oppressive rents is no less objectionable when it is done by someone other than the landlord without the collusion of the landlord.
Illusory tenancy was later defined generally as a residential leasehold created in a person who does not occupy the premises for his or her residential use and subleases it for profit, not because of necessity or other legally cognizable reason. (Matter of Badem Bldgs. v Abrams, 70 NY2d 45 [1987].) Such tenancies are condemned because they permit the unscrupulous to use the provisions of the RSL for financial gain, at the expense of those entitled to the laws’ protection to obtain living quarters at reasonable cost, and thereby frustrate the laws’ purposes.
In Bruenn v Cole (165 AD2d 443 [1st Dept 1991]), also involving the right to purchase the shares allocated to an apartment in a cooperative conversion, the Court discussed the criteria to be applied in determining whether a tenancy is bona fide or illusory. It concluded that the extent of protection intended to be afforded by the rent regulatory statutes, the intent of the asserted tenant to resume occupancy of the premises and the degree of control by the tenant are relevant factors to be considered in assessing the nature of the tenancy. A court is required to examine the bona fides of the tenancy of the person asserted to hold the status of prime tenant over the party in occupancy as subtenant. The animus reventendi, or intention to return, to the premises remains the criterion by which a tenant is judged to have conveyed a sublease and retained a reversionary interest, or has abandoned any reversionary interest in the leasehold. The length of time for which a tenant has relinquished occupancy of the premises is a salient consideration. Another factor in determining the relationship between the parties is the degree of control over the subject premises exercised by the tenant vis-á-vis the landlord or landlord’s agent. In other words, is it the landlord or the prime tenant that exercises dominion and control over the premises. A finding that the prime tenant may have occupied the premises at some time does not preclude a finding that the tenancy is illusory.
In Primrose Mgt. Co. v Donahoe (253 AD2d 404 [1st Dept 1998]), the Court cited Matter of Avon Furniture Leasing and *50 Matter of Badem Bldgs. for the proposition that an illusory tenancy exists where the rent laws have been violated in a way that has permitted the prime tenant to rent the apartment for the purpose of subleasing for profit or otherwise depriving the subtenant of rights under the Rent Stabilization Law. The Court stated it was clear in the case before it that the subtenancy was, from its inception, set up to permit the prime tenant to improperly profit by violating the rent regulations which is the hallmark of illusory tenancy.
The common thread running through the above cases is that courts will find an illusory tenancy when either: (a) the prime tenant subleases the apartment for profit, and/or (b) deprives the subtenant of rights under the RSL. In several of the above-detailed cases, the deprivation to the subtenant was the right to purchase the apartment in a cooperative conversion. This is in accord with and harkens back to the very rationale for the creation of the illusory tenancy doctrine, to prevent persons from circumventing the RSL to reap financial gain. Profiteering by overcharging clearly meets this criteria. Similarly a prime tenant, acting for him/herself or as the alter ego of the landlord, holding onto an apartment which was never needed or is no longer needed for living purposes, in an attempt to speculate and profit from a possible cooperative conversion also meets this criteria.
The illusory tenant doctrine can be best understood as a judicial attempt to accomplish what is fundamentally fair. This is the sin quo non for the creation of the doctrine of illusory tenancy. The right of a tenant to purchase an apartment in a cooperative conversion is a most significant one. The prime tenant, by the expediency of making the person a subtenant, denies that person the right to purchase the apartment and reserves that right onto himself. Fundamental precepts of fairness militate against permitting a prime tenant who does so and has not lived in the apartment and had no intention to return to it from reaping the benefit of purchasing the apartment.
The parties in their posttrial briefs have employed copious amounts of ink over whether Primrose requires an overcharge by the prime tenant in the rent charged the subtenant for a finding of illusory tenancy. An overcharge in the legal rent charged a subtenant is merely one indication of illusory tenancy, it is not exclusive. The determination of whether an illusory tenancy exists involves an assessment of the bona fides of the parties involved. As stated by Primrose, the hallmark of *51 illusory tenancy is a subtenancy set up to improperly profit by violating the rent regulations. The key to determining whether an illusory tenancy exists is — whether the sublease arrangement was or later became for the purpose of directly or indirectly evading the RSL which was designed to prevent unjust oppressive rents, prevent profiteering, speculation or other disruptive practices.
In the proceeding before the court, respondents had occupied the premises since the commencement of their tenancy, April 1986 until August 1993. The two-year sublet of the premises which was done at the request of respondents and approved by the landlord terminated on August 15, 1995. When the sublease expired the respondent subtenant, Tina Pelikan, remained in occupancy of the premises. There is no indication in the record that respondents or respondent subtenants contacted or informed the landlord the sublease was continuing. They did not seek or obtain permission to continue the sublet. As stated earlier in this opinion, respondent subtenants with the cooperation of the respondents sought to conceal their long term occupancy of the premises from the landlord. Respondent subtenants took no affirmative steps to apprise the landlord of their presence and possessory claim of tenancy.
There has been no subversion of the RSL in this proceeding. There has been no evidence that the sublet was ever for the purpose of profiteering or to deprive the subtenants of rights under the RSL. To grant respondent subtenants independent tenancy rights to this apartment would be to reward them for successfully continuing subletting the premises. This is not the purpose for which the illusory tenancy doctrine was created. Under the facts in this case there is no basis to confer independent tenancy rights on respondent subtenants. (West 46 Equities v Henry, NYLJ, Sept. 8, 1997, at 26, col 6 [App Term, 1st Dept].)
Accordingly, a final judgment of possession is entered in petitioner’s favor against all respondents. Issuance of a warrant of eviction is stayed 10 days for respondents to cure the sublet. If cured, the warrant is permanently stayed. If not cured execution of the warrant stayed until March 31, 2003, conditioned upon any outstanding use and occupancy (U & O) being paid within 10 days hereof and future U & O being paid by the 10th day of each month during the stay period. U & O is set at $1,562.52 per month.
*52 The court finds the balance of respondent subtenants’ claims to be without merit.