OPINION OF THE COURT
 

 Smith, J.
 

 The issue in this case is whether the space which respondent occupied in a lodging house is subject to rent-stabilization regulation. We affirm the order of the Appellate Division because under the facts of this particular case, the area in question constituted a "housing accommodation” not expressly excluded from the coverage of the rent-stabilization laws.
 

 Petitioner brought a holdover proceeding alleging that respondent’s tenancy expired on July 31, 1990 and that his right to occupy the space at issue had been terminated by a 30-day notice of termination. The petition further alleged that the respondent’s partitioned space was not "subject to rent control, rent stabilization or hotel stabilization.” The notice of termination did not state any grounds for the termination.
 

 Respondent moved to dismiss the petition on the ground that the space was subject to the Rent Stabilization Law and that the notice of termination failed to state any of the authorized grounds contained in the Rent Stabilization Code for terminating a rent-stabilized tenancy. Civil Court dismissed the petition on the ground that the termination notice was defective since the area in question was subject to rent stabilization.
 

 Petitioner appealed the dismissal to the Appellate Term which affirmed, with one Justice dissenting. On further leave to appeal to the Appellate Division, that Court also affirmed, and held that the Palace Hotel was subject to rent stabilization as a class B multiple dwelling. The Appellate Division thereafter granted petitioner leave to appeal to this Court.
 

 
 *355
 
 The Rent Stabilization Law (RSL) is a local law which governs rent stabilization in New York City. In March 1997, its provisions were extended by the City Council to April 1, 2000 (Local Laws, 1997, No. 13, of City of New York). The Emergency Tenant Protection Act of 1974 (ETPA) was enacted by the New York State Legislature and permits regulation of residential rents upon the declaration of a housing emergency in New York City (McKinney’s Uncons Laws of NY § 8623 [a]; § 8634). As of this date, the ETPA remains in "full force and effect until and including June 15, 1997”
 
 (see,
 
 L 1993, ch 253, § 29; McKinney’s Uncons Laws of NY § 8581 [Emergency Tenant Protection Act of 1974, L 1974, ch 576, § 4, as amended]).
 

 As relevant here, the RSL covers "housing accommodations in class A or class B multiple dwellings made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four” (Administrative Code of City of NY § 26-504 [b]). It is undisputed that the Palace Hotel is structurally classified as a class B multiple dwelling by the Department of Buildings
 
 (see,
 
 Multiple Dwelling Law § 4 [9]). The ETPA provides for "the regulation of all housing accommodations which it does not expressly except, including previously unregulated accommodations (McKinney’s Uncons Laws of NY §§ 8623, 8625)”
 
 (Matter of Salvati v Eimicke,
 
 72 NY2d 784, 791). The ETPA does not contain any exemptions applicable to respondent’s living space.
 

 The definition of "housing accommodation” for rent-stabilization purposes appears in the Rent Stabilization Code which defines the term as,
 

 "[t]hat
 
 part
 
 of any building or structure, occupied or intended to be
 
 occupied by one or more individuals as a residence, home, dwelling unit
 
 or apartment, and all services, privileges, furnishings, furniture and facilities supplied in connection with the occupation thereof” (9 NYCRR 2520.6 [a] [emphasis supplied]).
 

 This functional definition is not limited by any physical or structural requirements, such as minimum square footage.
 

 Whether a period of occupancy is accompanied by sufficient indicia of "permanency” such that the space occupied may be characterized as a home, residence or dwelling unit for rent-stabilization purposes is a fact-intensive question substantially turning on the intent and behavior of the parties. One factor to consider in reaching an appropriate determination is
 
 *356
 
 the length of time a landlord permits a person to continuously occupy the same space
 
 (see, e.g.,
 
 Rent Stabilization Code [9 NYCRR] § 2520.6 [j]; RPAPL 711).
 

 Other factors which may be considered include whether the occupant has any other residence, and any limitations relating to an occupant’s use and control of the premises which have been imposed and enforced by a landlord. The Code itself identifies the intent of the occupant as a relevant consideration
 
 (see,
 
 9 NYCRR 2520.6 [a] [providing that a tenant must occupy or intend to occupy that part of any building or structure as a residence, home or dwelling unit]).
 

 The landlord’s conduct in relation to respondent’s use of the rental space assigned to him demonstrates that, from the landlord’s perspective, it was expected and intended that respondent would occupy the area as his residence. The record reflects that the landlord rented the same space to the respondent for a continuous period of two years, and that respondent had no other residence during that time. That the landlord could have limited the length of respondent’s stay in the same living area to less than one week at a time
 
 [1]
 
 is irrelevant since the actual length of continuous occupancy was significantly longer.
 

 Furthermore, the landlord allowed respondent to retain a key over an extended period, which enabled respondent to exclude others from his designated space. The landlord also gave respondent extended permission to store all of his personal possessions, including clothes and a television set, inside a locker within the enclosed confines. Moreover, the record also contains an affidavit from the respondent which states that he considered the rented space to be his home. Thus, the findings below that the area was subject to rent-stabilization regulation are amply supported by the record.
 

 Petitioner’s contention that the space at issue cannot be characterized as a housing accommodation for rent-stabilization purposes because of its structural configuration is contradicted by the plain language of the Rent Stabilization Code. The Code defines a housing accommodation as that "part” of any building or structure, which is occupied, or
 
 *357
 
 intended to be occupied as,
 
 inter alia,
 
 a home, residence or dwelling unit.
 

 Petitioner also argues that courts should accord deference to the "longstanding interpretation” of the Division of Housing and Community Renewal (DHCR) (the agency responsible for the administration of the rent-stabilization laws in New York City) that places in lodging houses, such as the one at issue here, are exempt from rent regulation. "DHCR’s interpretation of the statutes it administers, if not unreasonable or irrational, is entitled to deference”
 
 (Matter of Salvati v Eimicke,
 
 72 NY2d 784, 791,
 
 supra).
 
 Although the question of whether a particular space is subject to rent stabilization falls within DHCR’s administrative expertise, this Court will annul DHCR determinations which are irrational or unsupported by substantial evidence
 
 (see, e.g., Matter of Salvati v Eimicke, supra).
 

 Petitioner cites to two DHCR orders as evidence of the agency’s "longstanding interpretation” that living compartments in lodging houses are not subject to rent stabilization. The orders (issued in 1992 and 1994), however, do not involve the Palace Hotel, and state, without any further elaboration, that the areas in question do not fall under the jurisdiction of the agency (Order of DHCR Denying Application or Terminating Proceeding, Docket No. ZEG 440321 [Aug. 20, 1992]; Order of DHCR Denying Application or Termination Proceeding, Docket No. HD-440167-R [Dec. 21, 1994]). As these orders, by their terms, limit their applicability to the specific premises which were at issue, it is unclear what general principle, if any, may be drawn from these determinations. Moreover, the orders are bare of any facts or reasoning which led DHCR to find that it lacked jurisdiction over the proceedings. Under these circumstances, no judicial deference to these DHCR orders is required in this essentially statutory construction controversy.
 

 To the extent that DHCR, participating as
 
 amicus curiae
 
 in this appeal, argues that the partitioned space here cannot be a housing accommodation as a matter of law, its position is unreasonable and inconsistent with the applicable statutes. As we have already observed, the definition of "housing accom
 
 *358
 
 modation” in the Rent Stabilization Code encompasses the space at issue in this case.
 
 [2]
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.
 

 [1]
 

 .
 
 See,
 
 Multiple Dwelling Law § 4 (14) (defining a lodging house as a multiple dwelling in which "persons are housed for hire for a single night, or for less than a week at one time, or any part of which is let for any person to sleep in for any term less than a week”); Administrative Code § 27-2004 (a) (18) (same).
 

 [2]
 

 . We do not address petitioner’s constitutional claims as they are unpreserved.