Sapp v Clark Wilson, Inc. (2022 NY Slip Op 04184)

Sapp v Clark Wilson, Inc.

2022 NY Slip Op 04184

Decided on June 29, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 29, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI
CHERYL E. CHAMBERS, JJ.

2018-14930
2018-14969
 (Index No. 12230/15)

[*1]Dianna Sapp, et al., plaintiffs, Tameake Macklin, et al., appellants, 
v
Clark Wilson, Inc., et al., respondents, et al., defendants.

Justine Luongo, Attorney-in-Charge of the Criminal Defense Practice, New York, NY (Judith Goldiner, Sunny Noh, Kat Meyers, Meghan Walsh, Caryn Schreiber, Shemori Corinthian, and Paul, Weiss, Rifkind, Wharton & Garrison LLP [Audra J. Soloway, Amy L. Barton, Elana R. Beale, and Peter L. Baltera], of counsel), for appellants.
Kucker Marino Winiarsky & Bittens, LLP, New York, NY (Nativ Winiarsky and Patrick K. Munson of counsel), for respondents.

DECISION & ORDER
In a consolidated action, inter alia, for declaratory relief, the appeals are from (1) an order of the Supreme Court, Kings County (Peter P. Sweeney, J.), dated November 13, 2018, and (2) a judgment of the same court, also dated November 13, 2018. The order, insofar as appealed from, granted those branches of the motion of the defendants Clark Wilson, Inc., Clark Assoc., Inc., Wilson Flat, Inc., Wilson Mer Assoc., Inc., Wilson-Hins Assoc., and Wilson-Han Assoc., Inc., which were for summary judgment dismissing the first, second, and third causes of action insofar as asserted against them by the appellants. The judgment, insofar as appealed from, upon the order, awarded those defendants possession of the units occupied by the appellants.
ORDERED that the appeal from the order is dismissed, without costs or disbursements; and it is further,
ORDERED that the judgment is affirmed insofar as appealed from, without costs or disbursements.
The appeal from the order must be dismissed because the right of direct appeal therefrom terminated with the entry of the judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
In October 2008, the New York City Department of Homeless Services (hereinafter DHS) entered into a contract with a service provider, the not-for-profit CAMBA, Inc. (hereinafter CAMBA), to provide transitional housing and services to homeless individuals and families pursuant to the Neighborhood Based Cluster Transitional Residence Program (hereinafter the Cluster Transitional Residence Program). Pursuant to this contract, CAMBA provided services to the homeless individuals and families, including food services, child care services, and health services. [*2]Several months later, in April 2009, in connection with CAMBA's contract with DHS, CAMBA entered into a Transitional Cluster Lease Agreement with We Care, Inc. (hereinafter We Care). The contract provided that a certain number of apartment units were to be made available to homeless families and individuals in buildings owned by the defendants Clark Wilson, Inc., Clark Assoc., Inc.,Wilson Flat, Inc., Wilson Mer Assoc., Inc., Wilson-Hins Assoc., and Wilson-Han Assoc., Inc. (hereinafter collectively the owners), at a per-unit/per-diem rate of $75.50. DHS would refer homeless families and individuals to CAMBA, and they would then be placed in these units. Rent was paid by CAMBA from the monies received from DHS pursuant to their contract.
In 2014, We Always Care, Inc. (hereinafter We Always), negotiated a contract directly with DHS, substantially similar to that entered into between CAMBA and DHS, to be a service provider supplying housing and services to homeless families. We Care began working exclusively with We Always, instead of CAMBA, as a service provider. We Always entered into a Transitional Cluster Lease Agreement with We Care, which provided for a per diem/per unit rate of $76.15.
The appellants are recipients of transitional housing and services for homeless individuals, who were placed in the owners' apartments by DHS under the Cluster Transitional Residence Program. In 2015, DHS advised one of the owners, Clark Wilson, Inc., that its building would no longer be used in the Cluster Transitional Residence Program and the appellants were informed that they would be transferred to other shelters. Thereafter, DHS informed the appellants that it was terminating its relationship with We Always as service provider at all of the owners' buildings.
The appellants then commenced separate actions, which were subsequently consolidated, alleging, inter alia, that they had been deprived of the benefits of rent stabilization by an illusory tenancy scheme. The appellants sought vacancy leases in their own names, and related relief. The owners subsequently moved, among other things, for summary judgment dismissing the appellants' first, second, and third causes of action, predicated on the illusory tenancy claim, insofar as asserted against them. (Relief sought by the owners against certain other plaintiffs is not at issue here.) The Supreme Court, inter alia, granted those branches of the motion, and a judgment dated November 13, 2018, was entered, among other things, awarding the owners possession of the units occupied by the appellants.
In its order, the Supreme Court concluded that the appellants did not have standing to seek vacancy leases because they were licensees, not subtenants. Resolution of this issue is unnecessary, however, because, even assuming arguendo that the appellants are properly treated as subtenants, the owners demonstrated, prima facie, that the prime tenancies were not illusory, so as to accord the appellants the rights of such prime tenants under the Rent Stabilization Law and Code. The merits of that issue, which were raised in the Supreme Court and briefed in this Court, can properly be considered as an alternative ground for affirmance (see e.g. Kauffman v Turner Constr. Co., 195 AD3d 1003, 1005; see also Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-546).
As to that dispositive issue, "[a]n illusory tenancy is defined generally as a residential leasehold created in a person who does not occupy the premises for his or her own residential use and subleases it for profit, not because of necessity or other legally cognizable reason" (Matter of Badem Bldgs. v Abrams, 70 NY2d 45, 52-53 [emphasis added]). An illusory tenancy scheme exists, for example, where the "prime tenant" rents a rent-stabilized apartment, which it never intends to occupy, and then subleases it for an amount in excess of the legal rent so as to make a profit (Matter of 333 E. 49th Partnership, LP v New York State Div. of Hous. & Community Renewal, 165 AD3d 93, 103; see Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 429, affd 11 NY3d 859; Primrose Mgt. Co. v Donahoe, 253 AD2d 404, 405; Matter of Avon Furniture Leasing v Popolizio, 116 AD2d 280, 284). Additionally, an illusory tenancy might exist where "an alter ego of the owner rents an apartment as the 'tenant' and then 'sublets' to an innocent third party in an effort to stockpile vacancies or subscriptions for a conversion to cooperative or condominium ownership" (Manocherian v Lenox Hill Hosp., 229 AD2d 197, 205). In such cases, the prime leases are nothing more than a contrivance with no [*3]legitimate purpose, and thus, are not entitled to legal recognition. Although illusory tenancy schemes may take different forms, "[a] case presenting the issue of illusory tenancy requires that the court examine the bona fides of the tenancy of the person [or entity] asserted to hold the status of prime tenant over the party in occupancy as subtenant" (Bruenn v Cole, 165 AD2d 443, 447).
The leases in the present case did not lack a legitimate purpose. The subject premises were leased to, and by, both CAMBA and We Always for the "legally cognizable reason" of providing transitional housing in accordance with the terms of the Cluster Transitional Residence Program run by the City (Matter of Badem Bldgs. v Abrams, 70 NY2d at 53). The leases entered into by CAMBA and We Always both specified that the agreement was entered into "for the sole purpose of providing transitional housing and services in connection with the DHS Agreement," and the leases expired by their terms upon termination of the DHS Agreement (if not terminated earlier). Under the leases, CAMBA and We Always leased unspecified units in particular buildings, the number of which would increase or decease depending upon the extent of the needs of DHS to provide transitional housing for homeless families and individuals.
The undisputed facts that the units in which the appellants resided were leased by CAMBA and We Always pursuant to their agreements with DHS, and that the leases expired by their terms upon termination of such agreements, established, prima facie, "the bona fides of the tenancy of [the entity] asserted to hold the status of prime tenant," i.e., CAMBA and We Always (Bruenn v Cole, 165 AD2d at 447). Under these circumstances, the owners demonstrated, prima facie, that the appellants were not entitled to vacancy leases and related relief because illusory tenancies were not created to deprive them of the benefits of rent stabilization (see Ecumenical Community Dev. Org., Inc. v GVS Props. II, LLC, 168 AD3d 522, 523; Mancherian v Lenox Hill Hosp., 229 AD2d at 205; cf. Primrose Mgt. Co. v Donahoe, 253 AD2d at 405-406).
As noted, the Court of Appeals' definition of "illusory tenancy" includes the element that the leases were not made "because of necessity or other legally cognizable reason" (Matter of Badem Bldgs. v Abrams, 70 NY2d at 52-53). We disagree with the conclusion of our dissenting colleague that this element is unessential to the meaning of the doctrine of illusory tenancy, or, in other words, that an illusory tenancy can be created on some other basis notwithstanding the legitimate, legally cognizable reason for the prime lease (see Matter of Avon Furniture Leasing v Popolizio, 116 AD2d at 282 [illusory tenancy existed where the prime tenant rented the subject apartment "only for purposes of furnishing and 'subletting' it at a rent considerably in excess of the lawful stabilized rent" (emphasis added) and "was in the business of renting and subletting apartments in this fashion"]; Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809, 811, 811 n 1 [Sup Ct, New York County] [the term "'illusory tenant,'" a "term of art in the course of both judicial and administrative interpretation" "implies a fraudulent or otherwise improper scheme or conveyance"]).
In opposition to the owners' prima facie showing, the appellants failed to raise a triable issue of fact or, contrary to their contention, demonstrate that summary judgment was premature. While our dissenting colleague concludes that "the matter is rife with material issues of fact" or that summary judgment is premature, none of the factual issues identified by the appellants, and relied upon by our dissenting colleague, are material issues of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324). No matter how those factual issues are resolved, the outcome remains the same. Thus, this matter is entirely appropriate for summary disposition as a matter of law.
The appellants first identify factual issues concerning the relationship between the owners and We Always, asserting that evidence suggests, and further discovery will reveal, that the owners and We Always are related entities controlled by the same individuals. Even if these facts are proven true, however, the appellants assert that the owners engaged in such an illusory tenancy scheme not only by leasing to We Always, but also by leasing to CAMBA as an illusory tenant. Indeed, the effect of these leases with respect to the interests of both the owners and the appellants was the same whether units were leased to any allegedly related entity or to CAMBA. Even the per unit/per diem rent to be paid to the owners by DHS through We Always was less than $1 above the rate which CAMBA had agreed to pay the owners five years earlier.
The appellants' theory is that the leasing of units to both CAMBA and We Always was a scheme to deprive the appellants of the benefits of Rent Stabilization Law. As explained above, this theory is untenable because the leases to CAMBA and We Always were made to comply with the Cluster Transitional Residence Program, and finding that the owners were related to one of these two tenants does not change that fact. Under the appellants' logic, the owners should not have allowed any apartments to be leased to We Always or CAMBA because doing so created an illusory tenancy. Such refusal would have left DHS without the transitional housing that it needed to fulfill its mandate of providing housing to homeless families. Even if the Cluster Transitional Residence Program, which was eventually ended by the City, was problematic, this does not make the tenancies created in conformance therewith unlawful.
Thus, for the purpose of determining whether the owners engaged in an illusory tenancy scheme, the relationship between the owners and We Always is immaterial.
The other factual issues identified by the appellants concern whether or not they should be considered tenants with standing to prosecute this action, or nonaffiliated tenants (see Rent Stabilization Code [RSC] [9 NYCRR] § 2520.11[f]), making the apartments subject to the Rent Stabilization Law and Code. Resolution of these factual issues would be a futile exercise, as the illusory tenancy claim they seek to prosecute is meritless regardless of the answers to those questions.
Finally, this Court's decision in DiGiorgio v 1109-1113 Manhattan Ave. Partners, LLC (102 AD3d 725), does not warrant a different result. In that declaratory judgment action, pursuant to "'transitional residency agreements,'" the plaintiffs occupied rooms in a hotel owned by the defendant 109-1113 Manhattan Avenue Partners, LLC (hereinafter MAP), and leased to the defendant CIS Counseling Center, Inc. (hereinafter CIS) (id. at 727). The plaintiffs sought, among other things, a judgment declaring that the agreement between MAP and CIS constituted an illusory tenancy (see id.). The Supreme Court, inter alia, dismissed that cause of action pursuant to CPLR 3211(a)(7) for failure to state a cause of action. In reversing that portion of the order, this Court merely determined that the allegations of the complaint were "sufficient to invoke the Supreme Court's power to render a declaration as to whether the alleged agreement between MAP and CIS constituted an illusory tenancy" (DiGiorgio v 1109-1113 Manhattan Ave. Partners, LLC, 102 AD3d at 729). In other words, material factual differences between the present case and DiGiorgio aside, this Court merely determined in DiGiorgio that the plaintiffs had stated a cause of action for declaratory relief, not that material issues of fact existed as to the illusory tenancy claim.
Since the owners in the present case have demonstrated their entitlement to judgment as a matter of law on the merits of the illusory tenancy issue, the Supreme Court's determination summarily dismissing the first, second, and third causes of action insofar as asserted against them by the appellants, and awarding them possession was proper, and further litigation would be wasteful and unnecessary.
Accordingly, we affirm the judgment insofar as appealed from.
CONNOLLY, IANNACCI and CHAMBERS, JJ., concur.
DUFFY, J.P., concurs in part and dissents in part, and votes to dismiss the appeal from the order and to reverse the judgment insofar as appealed from, on the law, deny those branches of the motion of the defendants Clark Wilson, Inc., Clark Assoc., Inc., Wilson Flat, Inc., Wilson Mer Assoc., Inc., Wilson-Hins Assoc., and Wilson Han Assoc., Inc., which were for summary judgment dismissing the first, second, and third causes of action insofar as asserted against them by the appellants, and modify the order accordingly, with the following memorandum:
There are issues of fact, or, at the very least, a need for discovery by the appealing plaintiffs (hereinafter the plaintiffs), that preclude an award of summary judgment to the defendants Clark Wilson, Inc., Clark Assoc., Inc., Wilson Flat, Inc., Wilson Mer Assoc., Inc., Wilson-Hins Assoc., and Wilson Han Assoc., Inc. (hereinafter the owners), in this consolidated action. Accordingly, I vote to reverse the judgment of the Supreme Court, Kings County (Peter P. Sweeney, [*4]J.), dated November 13, 2018, insofar as appealed from, and deny those branches of the owners' motion which were for summary judgment dismissing the first, second, and third causes of action insofar as asserted against them by the plaintiffs.
Contrary to the determination of the Supreme Court, the owners failed to establish their entitlement to judgment as a matter of law as to their contention that the plaintiffs lack standing. Moreover, I disagree with the conclusion reached by my colleagues in the majority. I submit that the matter is rife with material issues of fact which appropriately fall within the province of a jury and should not be resolved on a motion for summary judgment. In any event, the motion should have been denied as premature as the plaintiffs have established that there is relevant discovery solely within the province of the owners and the defendants We Care, Inc. (hereinafter We Care), We All Care, Inc. (hereinafter We All), and We Always Care, Inc. (hereinafter We Always; hereinafter collectively the We Care companies).
As is relevant to this appeal, the plaintiffs, formerly homeless individuals residing in apartments in buildings in Brooklyn (hereinafter the buildings) owned by the owners, commenced two separate actions in October 2015 and September 2016, respectively, alleging, inter alia, that the owners, acting in concert with, among others, the We Care companies, created an illusory tenancy scheme with the purpose of depriving the plaintiffs of their rights under the Rent Stabilization Code (first, second, and third causes of action). The two actions were subsequently consolidated. The plaintiffs alleged that, in 2002, the owners began renting apartments in the buildings to We All and We Care, for-profit organizations, which then contracted with the New York City Department of Homeless Services (hereinafter DHS) purporting to assist in finding shelter and services for homeless families pursuant to the Neighborhood Based Cluster Transitional Residence Program (hereinafter the Cluster Program). There is no dispute that the buildings are subject to the Rent Stabilization Law. The plaintiffs further alleged that they subsequently moved into the apartments in the buildings and DHS paid the rent to We All and We Care—in amounts designated by the owners and above what was permitted by the applicable Rent Stabilization Code for each apartment. In 2008, after DHS changed its policy to require the Cluster Program service providers to operate as not-for-profit organizations, We All and We Care subleased the apartments to the not-for-profit social service provider CAMBA, Inc. (hereinafter CAMBA), which then contracted with DHS to use these subleased apartments as temporary housing for homeless individuals and families. The plaintiffs alleged that the subleasing to CAMBA ended in 2014 and We Always was created to assume the role of the not-for-profit service provider to contract with DHS so as to further continue the creation of illusory tenancies under the Cluster Program. The plaintiffs further alleged that the homeless families residing at the building owned by Clark Wilson, Inc., were informed by DHS that it planned to stop using that building as of October 31, 2015; the plaintiffs were also informed by DHS that it was terminating its relationship with We Always in connections with all of the owners' buildings as of June 30, 2016.
According to the plaintiffs, the owners systematically violated the Rent Stabilization Code by creating illusory tenancies in order to increase the rent in the apartments significantly in excess of the lawful stabilized rent. The plaintiffs also alleged that there is a relationship between Barry Hersko, the chief executive officer of the owners, and Isaac Hersko, the president of the two organizations—We All and We Care—and also that the owners and the We Care companies "are intricately connected organizationally, and financially." There is no dispute that Barry Hersko and Isaac Hersko are brothers. The plaintiffs further alleged that the owners and their lessees—We All and We Care—all listed the same address for each respective business and that Isaac Hersko acted as the principal of We All and We Care, even though he held a mortgage on one of the owners' buildings at the same time. The plaintiffs also alleged that We Always possessed a liability insurance policy which provided coverage for incidents occurring at the owners' buildings.
The owners moved for summary judgment dismissing the complaints insofar as asserted against them. In an order dated November 13, 2018, the Supreme Court, inter alia, awarded summary judgment to the owners dismissing the first, second, and third causes of action insofar as asserted against them by the plaintiffs. The court found that the plaintiffs were not entitled to the protections of the Rent Stabilization Code because they were licensees and not rent-stabilized tenants and, therefore, lacked standing to bring the action. The court issued a judgment, upon the order, in [*5]favor of the owners, inter alia, awarding the owners possession of the units occupied by the plaintiffs.
Contrary to the Supreme Court's conclusion, which failed to afford the plaintiffs' submissions the favorable assumptions to which they were entitled (see e.g. Vega v Restani Constr. Corp., 18 NY3d 499, 503; O'Brien v Asphalt Green, Inc., 193 AD3d 1061, 1062), the owners failed to demonstrate that no triable issues of fact exist as to whether the plaintiffs were licensees and not tenants of the owners' buildings. Indeed, there are triable issues of fact as to whether the plaintiffs are entitled to the protection of the Rent Stabilization Code and whether the agreements between the owners and the We Care companies created illusory tenancies so as to deprive the plaintiffs of their rights under the Rent Stabilization Code.
"What defines the proprietary relationship between the parties is not its characterization or the technical language used in the instrument, but rather the manifest intention of the parties" (American Jewish Theatre v Roundabout Theatre Co., 203 AD2d 155, 156). "Whether a period of occupancy is accompanied by sufficient indicia of 'permanency' such that the space occupied may be characterized as a home, residence or dwelling unit for rent-stabilization purposes is a fact-intensive question substantially turning on the intent and behavior of the parties" (Matter of Gracecor Realty Co. v Hargrove, 90 NY2d 350, 355). Here, although the plaintiffs were not the tenants of record and the language of the transitional cluster lease agreements indicate that the housing offered to the plaintiffs was "temporary," in fact, many of the plaintiffs had been residing in the buildings for several years (see e.g. id. at 356; see White Knight Ltd. v Shea, 10 AD3d 567, 567). In addition, the plaintiffs alleged that they had keys to their apartments and did not share their units with others (see Matter of Gracecor Realty Co. v Hargrove, 90 NY2d at 355). There also is no indication that the plaintiffs' placements at the buildings were revokable at will.
Thus, contrary to the owners' contention, there are material issues of fact as to whether the Rent Stabilization Code is applicable to this matter. Although the Rent Stabilization Code does not apply to housing accommodations owned, operated, leased, or rented pursuant to governmental funding by any institution operated exclusively for charitable or educational purposes on a nonprofit basis, and occupied by a tenant whose initial occupancy is contingent upon an affiliation with such institution (see e.g. 2363 ACP Pineapple, LLC v Iris House, Inc., 55 Misc 3d 7, 9 [App Term, 1st Dept]), there is a triable issue of fact as to whether the plaintiffs were ever "affiliat[ed]" with the tenants of record as defined by this statute (Rent Stabilization Code [RSC] [9 NYCRR] § 2520.11[f]). The exemption pursuant to section 2520.11(f) of the Rent Stabilization Code "was intended to exempt from rent stabilization accommodations run by charitable and educational institutions whose needs were furthered by having access to unregulated housing in order to house staff or students, as long as those tenants' affiliation with those institutions remained in effect" (2363 ACP Pineapple, LLC v Iris House, Inc., 55 Misc 3d at 9; see Manocherian v Lenox Hill Hosp., 84 NY2d 385, 390-391). However, housing accommodations occupied by nonaffiliated tenants are subject to the Rent Stabilization Code (see RSC § 2520.11[f]).
The Supreme Court's sole basis for awarding summary judgment to the owners was its erroneous determination as to the plaintiffs' standing. Since the owners failed to eliminate all triable issues of fact as to whether the plaintiffs are "nonaffiliated tenant[s]" under the exemption set forth in RSC § 2520.11(f), and protected by the Rent Stabilization Code, and thus whether the plaintiffs have standing to proceed on their claims alleging illusory tenancies, I submit that, contrary to the determination of my colleagues in the majority, the judgment should be reversed insofar as appealed from.
However, my colleagues in the majority have reached an issue not decided by the Supreme Court and, in effect, concluded that the determination of whether an illusory tenancy exists is a question of law rather than a factual determination. I submit that such a determination is contrary to this Court's precedent. In DiGiorgio v 1109-1113 Manhattan Ave. Partners, LLC. (102 AD3d 725), an action with facts similar to the facts of this case, this Court, inter alia, reversed the Supreme Court's determination that the defendants in that case demonstrated, as matter of law, that the occupants of the single-occupancy rooms in that defendant owner's building were licensees and not tenants of those rooms (see id. at 730). There, this Court remitted the matter to the Supreme [*6]Court for further proceedings (see id. at 726). There, as here, the plaintiffs sought, inter alia, a judgment declaring that the single-occupancy rooms in which they were living were subject to rent stabilization; that they were permanent tenants; and that the agreement between that defendant owner to lease single-occupancy rooms to the defendant counseling center for amounts above their legal regulated rent constituted an illusory tenancy (see id. at 727). The plaintiffs in that case, like the plaintiffs here, alleged that they had signed "'transitional residency agreements'" and agreed to attend an outpatient substance-abuse treatment program owned and operated by the counseling center (id. at 727). In that action, the complaint alleged that the counseling center was able to pay the inflated illegal rent, which was almost six times the legal regulated rent, to the owner and still profit "by collecting rental payments directly from the New York City Human Resources Administration for each resident, and by charging Medicaid for each substance-abuse treatment session attended by the residents" (id.). This Court found that the material allegations in the complaint raised factual issues as to the rights of the parties which could not be determined as a matter of law (see id. at 730). Here, the conclusion reached by my colleagues in the majority—an issue not decided by Supreme Court—neither comports with nor distinguishes this Court's precedent in DiGiorgio v 1109-1113 Manhattan Ave. Partners, LLC. (102 AD3d 725).
"The rent stabilization laws were enacted within the context of an extremely serious housing shortage, particularly for those only able to afford reasonable rents, and are designed 'to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices'" (Matter of Avon Furniture Leasing, Inc. v Popolizio, 116 AD2d 280, 283, quoting Administrative Code of the City of New York former § YY51-1.0). "Toward that end the Rent Stabilization Code expressly provides, . . . that: 'The stabilization rents and other requirements provided in this Code shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of dwelling units'" (Matter of Avon Furniture Leasing, Inc. v Popolizio, 116 AD2d at 283 [emphasis omitted]). "The provisions of the Rent Stabilization Law represent a pragmatic balance between affording the owners of properties adequate periodic rent increases to enable them to properly maintain their properties in the face of rising costs, while at the same time affording to tenants an assurance against unreasonable escalations in rent and also various other rights and protections. . . . The attempts which have been made to upset this balance, and to pervert the beneficial purpose of the law, have been varied and creative and ofttimes cynically cloaked in a mantle of misleading nomenclature and fictitious characterizations of tenancy status. It is in response to such schemes that the law of illusory tenancy evolved" (id. at 283-284, citing Hutchins v Conciliation & Appeals Bd., 125 Misc 2d 809 [Sup Ct, New York County]).
"An illusory tenancy is defined generally as a residential leasehold created in a person who does not occupy the premises for his or her own residential use and subleases it for profit, not because of necessity or other legally cognizable reason" (Matter of Badem Bldgs. v Abrams, 70 NY2d 45, 52-53), or can be created if the effect of the sublease is to, directly or indirectly, evade the requirements of the Rent Stabilization Code (see Matter of Avon Furniture Leasing v Popolizio, 116 AD2d at 284; see also Primrose Mgt. Co. v Donahoe, 253 AD2d 404, 405).
Notably, although my colleagues in the majority have concluded, in effect, that, as a matter of law, no illusory tenancies can exist under the facts of this case because providing housing for homeless persons is a legally cognizable reason, they do so by ignoring the express language of the provisions of the Rent Stabilization Code which does not limit the ways in which an illusory tenancy can be created (see 9 NYCRR 2525.2[a]). The Rent Stabilization Code expressly sets forth that "the legal regulated rents and other requirements 'shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease for housing accommodations'" (Matter of 333 E. 49th Partnership, LP v New York State Div. of Hous. & Community Renewal, 165 AD3d 93, 101, quoting 9 NYCRR 2525.2[a]). In such an evasion of the Rent Stabilization Code, "the subtenant will be accorded the full protection of the rent stabilization laws" (Matter of Avon Furniture Leasing v Popolizio, 116 AD2d at 284; see e.g. Yellon v Reiner-Kaiser Assoc., 89 AD2d 561, 563). Here, my colleagues in the majority wholly fail to address this other basis alleged by the plaintiffs as to how the illusory tenancy was created here—to wit, where the effect of the subleases, directly or indirectly, was to evade the requirements of the Rent Stabilization Code (see e.g. Matter of Avon Furniture Leasing v Popolizio, 116 AD2d at 284).
My colleagues in the majority also fail to address the records submitted by the plaintiffs which support the plaintiffs' assertion that the owners have sought to evade the requirements of the Rent Stabilization Code since 2002. The majority does not address the plaintiffs' allegations, supported by documents in the record, that the owners and the We Care companies have been working together since 2002 when the owners began renting their apartments in the buildings to We All and We Care, for-profit organizations, which entered into agreements with DHS to provide apartments and services for homeless families and receive rent for the apartments leased from the owners. Instead, the majority limits its discussion to allegations as to events since 2008 when DHS contracted with CAMBA.
Here, the documents submitted by the plaintiffs support their allegations that the effect of these agreements was to evade the requirements of the Rent Stabilization Code (see e.g. id.). According to the yearly Registration Rent Roll Report from the Office of Rent Administration in the New York State Division of Housing and Community Renewal records submitted by the plaintiffs in opposition to the owners' motion, since 2002, the apartments in one of the owners' buildings were sublet to We All and We Care at rents considerably in excess of the applicable legal regulated rents. The documents show, for example, that the monthly legal regulated rent in 2011 for one apartment in one of the buildings with a rent-stabilized tenant was listed by the owners as $1,130.99; in 2012, the apartment was vacant and the owners more than doubled the amount of the rent, listing the purported legal regulated rent as $2,400 per month despite the statutory vacancy rate at that time which only permitted a 20% increase (see 9 NYCRR § 2522.8[a][1]). Pursuant to section 2522.8(a)(1) of the Rent Stabilization Code, in 2012, the legal regulated rent of $1,130.99 for that vacant apartment could only be increased by $226.20, and, thus, the maximum legally regulated rent should have been $1,357.19; in 2013, the owners thereafter increased that same apartment's monthly rent to $3,000 when it was leased for the first time since it was vacant to We Care. These records submitted by the plaintiffs raised triable issues of fact as to whether the owners engaged in a rent-hiking practice with respect to all of the apartments leased to the We Care companies from 2002 to 2015.
The owners' purported history of lack of compliance with the Rent Stabilization Code since 2002 supports the plaintiffs' claims of illusory tenancies. Moreover, the subleasing of the apartments to CAMBA by We All and We Care from 2008 to 2014 also involved rents considerably in excess of the applicable legal regulated rent for each apartment. Thus, the owners failed to show, as a matter of law, that the plaintiffs' claims of illusory tenancies in violation of the Rent Stabilization Code do not stand.
Significantly, even if the owners established their prima facie entitlement to summary judgment on these issues, which, I submit, they have not, the plaintiffs have raised material issues of fact regarding the identity of the relationship between the owners and the We Care companies and, specifically, whether the We Care companies are actually shell entities of the owners. Here, the prime tenants in this case were We All and We Care. The evidence in the record suggests that the owners were primarily involved in the contract negotiations between We Always and DHS despite the fact that the owners were not named parties to the proposed agreement. The documents submitted by the plaintiffs in opposition to the owners' motion show that, in September 2014, Barry Hersko, the chief executive officer of the owners and brother to Isaac Hersko, who was the president of We All and We Care, forwarded "a Proposal for the operation of We Always Care Cluster Shelter" to DHS, and DHS referred to Barry Hersko as the executive director of We Always in a letter dated June 10, 2015, in which DHS confirmed it was in the process of entering into an agreement with his organization, We Always, to utilize 300 apartments for shelter at a rate of $90 per day. These documents alone raise material issues of fact as to the relationship between the owners and the We Care companies, which is a key factor in determining whether the tenancies are illusory. Notably, as indicated by the related appeal decided herewith (see Sapp v Clark Wilson, Inc., _____ AD3d _____ [Appellate Division Docket No. 2019-04141; decided herewith]), the agreement between DHS and We Always was never approved by the Office of the New York City Comptroller (hereinafter the Comptroller). Indeed, DHS withdrew the agreement from consideration for approval by the Comptroller, as required pursuant to New York City Charter § 328, after the Comptroller raised concerns about a potential conflict of interest on the part of We Always due to its apparent relationship with the owners (see id.).
Thus, contrary to the contention of my colleagues in the majority, I submit that it is not an "undisputed fact[ ]" that the units in which some of the plaintiffs resided were leased by We Always pursuant to its agreement with DHS since, as noted in this Court's decision decided herewith, DHS withdrew the agreement with We Always from consideration by the Comptroller despite the fact that We Always had entered into the agreement for the purpose of providing transitional housing and services in connection with the agreement.
Since the owners have failed to eliminate triable issues of fact with respect to whether the We Care companies were, in effect, only the alter egos of the owners, an award of summary judgment to the owners dismissing the first, second, and third causes of action alleging an illusory tenancy scheme insofar as asserted against them by the plaintiffs was not warranted.
Even if such issues of fact did not exist, I submit that the owners' motion for summary judgment should have been denied as premature as there is relevant information exclusively within the owners' knowledge and control to which the plaintiffs are entitled to explore in discovery (see CPLR 3212[f]; Ticali v Locascio, 24 AD3d 430, 431; see e.g. Ruiz v Torres, 137 AD3d 1100, 1101). The plaintiffs have not had the opportunity to depose the owners or any witnesses from the defendants so that more details of the relationship between the We Care companies and the owners could be discovered, and relevant rent stabilization leases and documentation be provided. Remarkably, the appellate brief of the owners does not even respond to the plaintiffs' argument that summary judgment should have been denied as premature. Thus, irrespective of the merits, the judgment and those branches of the owners' motion at issue should be reversed on the ground that the motion was premature (see e.g. Ruiz v Torres, 137 AD3d at 1101).
Accordingly, for all of the reasons set forth above, I dissent and would reverse the judgment insofar as appealed from and deny those branches of the owners' motion which were for summary judgment dismissing the first, second, and third causes of action insofar as asserted against them by the plaintiffs.
ENTER:
Maria T. Fasulo
Clerk of the Court